JOHN GURA ET AL. *vs.* VINCENT SCOTNICKIE ET AL.

Third Judicial District, Bridgeport, October Term, 1924.
WHEELER, C. J., BEACH, CURTIS, KELLOGG and BANKS, Js.

In April, 1921, the plaintiffs acquired the northerly, and in August of the same year the defendants acquired the southerly, of two adjoining lots of land which originally constituted an undivided tract, owned by I, and bounded westerly by Dayton Place and southerly by Wall Street, which did not intersect Dayton Place at right angles but ran therefrom in a northeasterly direction. In 1907 I divided the tract and conveyed the two lots to the

Gura *v.* Scotnickie.

parties' respective predecessors in title, describing the boundary between them as a line running easterly at right angles to Dayton Place. Subsequent deeds were consistent with this boundary line, until 1919, when a grantor of the southerly (defendants') lot, described the easterly boundary thereof as forty feet in length, "or as otherwise bounded as of record may appear", which description was followed in all succeeding deeds except that in the final deed to the defendants, the alternative reference was omitted. Owing to the direction of Wall Street, this description, if effective, as claimed by defendants, would change the boundary line between the lots and cut a triangular section from the southerly portion of the plaintiffs' lot. *Held* that the defendants' claim was without merit and that record title to the triangular strip was in the plaintiffs, in the absence of a finding that their predecessor in title had been ousted of possession at the time of conveyance to them.

It appeared that there was a stone wall along the boundary line as claimed by the defendants, and the trial court found that "all of the land included in the boundaries of the defendants was located south of said stone wall and on land which had been used in connection with the house located upon the defendants' land continuously for more than thirty-five years." *Held:*

1. That this was not a finding of adverse possession, since it lacked the essentials of adverse, open and exclusive occupancy for the statutory period.

2. That the stone wall could have no significance as a boundary line prior to the division of the tract in 1907 by I, the common grantor.

3. That no adverse possession by one of I's grantees against the other could commence during I's life, since he had reserved to himself the use of the whole tract until his death, the date of which did not affirmatively appear.

4. That the testimony of one witness that the stone wall had been "treated as a boundary line", but for how long he did not remember, and the defendants' testimony that there were clothes poles on the land when they purchased it in 1921, did not tend to establish adverse possession.

In actions in the nature of trespass *qu. cl. fr.,* the plaintiff must establish either his actual, exclusive possession of the *locus,* or a constructive possession by proof of title and the absence of actual, exclusive possession by another.

Argued October 28th, 1924—decided February 23d, 1925.

ACTION for damages for unlawfully entering upon the plaintiffs' land and erecting a building thereon, and to settle and quiet the title thereto, brought to and tried by the City Court of Meriden, *Fenn, J.;* facts found and judgment rendered for the defendants, and appeal by the plaintiffs. *Error.*

Plaintiffs and defendants are adjoining proprietors of lands bounded west on Dayton Place in the City of Meriden. The plaintiffs' deed bounds their lot south by land of Max Cherniack, defendants' immediate grantor; and the defendants' deed bounds their lot north on land of Frank H. Ives, through whom the plaintiffs derive title. The controversy turns on the question whether the dividing line between these two lots runs easterly from a point on Dayton Place about ninety feet north of Wall Street, at right angles to Dayton Place, as the plaintiffs claim, or whether it runs northeasterly from the same point in the line of an old stone wall, as the defendants claim, and as the trial court has found. The defendants have recently built a garage, standing partly within the triangle included between these diverging lines, and this is the trespass complained of. The first count of the complaint alleges possession by the plaintiffs, and unlawful entry and erection of a building by the defendants. The second count alleges ownership and possession by plaintiffs, and an adverse claim of title or interest by defendants. Under the first count damages are claimed, and under the second a judgment quieting and settling the title. The answer denies possession and ownership by the plaintiffs, and as a special defense, alleges that the defendants are the owners and in possession of a described tract of land, claimed in part by plaintiffs.

The trial court finds that the defendants were on August 1st, 1922, the owners and in possession of a

tract of land bounded as follows: "north by land of the plaintiffs; east by land formerly owned by Anna E. Denham and Adella Hallock, forty feet; south on Wall Street eighty feet; west on Dayton Place, ninety feet." And that the plaintiffs' land was not described by metes and bounds. It also finds as a fact that the boundary between the plaintiffs' and defendants' land is the stone wall beginning on Dayton Place, as far as it goes, and the line of the wall extended to the eastern bound. Further, that all of the land south of the stone wall "had been used in connection with the house located upon the defendants' land continuously for more than thirty-five years."

The important assignments of error relate to the alleged misconstruction of plaintiffs' and defendants' deeds, and other deeds in their respective chains of title; and to the corrections of such findings as to boundaries and title as are inconsistent with the record title as the plaintiffs claim it.

*Denis T. O'Brien, Jr.*, and *George E. Beers*, for the appellants (plaintiffs).

*Cornelius J. Danaher*, for the appellees (defendants).

BEACH, J. Taking, first, the record title. The plaintiffs and defendants derive title from a common grantor, Franklin T. Ives, who, in 1907, owned a tract of land bounded north on land of one Berberich, east on land of Peck, south on Wall Street, and west on Dayton Place. On March 22d, 1907, by three quitclaim deeds he divided the tract into three lots described therein as follows:

One lot, quitclaimed by plaintiffs' Exhibit 2 to Rollin L. Ives, is described as follows: "Beginning at the

southwest corner of land of Martin Berberich on Dayton Place, running southerly on line of Dayton Place . . . to land of releasor, thence turning at right angles the boundary line to continue easterly along other land of releasor to land of Charles and Carlos Peck and along Pecks line northerly to land of Martin Berberich—thence along Berberich land to place of starting."

The lot next southerly, quitclaimed by plaintiffs' Exhibit 8 to Frank H. Ives, is bounded as follows: "Beginning at a point eighty feet south from the southwest corner of land of Martin Berberich on Dayton Place, and running thence southerly to a point ninety-one feet therefrom, thence turning east at right angles to said street and running easterly to land of Charles and Carlos Peck along other land of releasor, thence running northerly along line of said Peck Brothers to a point opposite the starting point, and thence westerly at right angles, or parallel to southern boundary, west to place of starting, making the lot 91 feet on Dayton Place and leaving lot 80 feet front intervening said lot and lot of Martin Berberich." This is the lot to which the plaintiffs now claim title.

The third most southerly lot was quitclaimed by plaintiffs' Exhibit 11 to Wesley E. Ives, and described thus: "Beginning on land of releasor on Dayton Place, at a point one hundred and seventy-one feet from the southwest corner of the land of Martin Berberich, thence running along line of Dayton Place south to Wall Street and easterly along line of Wall Street to land of Charles and Carlos Peck, thence northerly along line of Pecks land to a point opposite the starting point, thence westerly along releasor's land directly to point of starting—leaving two lots of 91 and 80 feet respectively—between lot herein conveyed and land of Martin Berberich." The defendants are the record

·owners of this lot. Franklin T. Ives reserved to himself the life use of each of these three lots, and it appears .from the exhibits of receipts of transfer tax that he died prior to April 22d, 1910.

We think three things are apparent at the outset: first, that these three contemporaneous deeds must be construed harmoniously; second, that the southerly boundary line of the Frank H. Ives lot is plainly described as running easterly from a given point at right angles to Dayton Place; third, that the boundaries of the Wesley E. Ives lot are not described by measurements. Tracing the record title of the plaintiffs, we find that Frank H. Ives held the lot conveyed to him until March 1st, 1921, when he conveyed to one Cloonan, by warranty deed, subject to a mortgage, a lot bounded as follows: "North by land of Adelard Dupuis et al.; east by land of Patrick McMahon; south by land of Max Cherniack" (the defendants' immediate grantor); "west by Dayton Place." On April 8th, 1921, Cloonan conveyed the same lot by the same description, subject to the same mortgage, to the plaintiffs.

The description of the lot conveyed by these two deeds last mentioned is indefinite. It does, however, locate the south boundary as on land of Cherniack, and we now trace Cherniack's record title from Wesley E. Ives, who conveyed to Rollin S. Ives April 7th, 1911, describing the lot as bounded "North on land of Frank H. Ives; east on land of Elizabeth W. Peck; south on Wall Street; and west on Dayton Place. Being the same premises conveyed to grantor by F. T. Ives and recorded," etc. This identification of the lot conveyed with Wesley's original portion, makes it certain that the bound "north on land of Frank H. Ives" is the original boundary running easterly at right angles to Dayton Place. On October 25th, 1919, Rollin

S. Ives conveyed the premises to one Reader, and bounded the same "North on land of Frank H. Ives; east on land of Emma E. Denham . . . forty feet (40); south on Wall Street eighty feet (80); west on Dayton Place ninety feet (90) or as otherwise bounded as of record may appear." The measurements on Wall Street and Dayton Place are consistent with the dimensions of the original Wesley Ives lot; but because Wall Street runs northeasterly from Dayton Place, a forty-foot east boundary on land of Emma E. Denham would be inconsistent with the original deed to Wesley, and with Wesley's deed to Rollin, for it would carry the northeast corner of the premises north of the original north boundary running at right angles to Dayton Place, and would make it run in a northeasterly direction from Dayton Place more nearly in the line of the old stone wall.

So far as the record title is concerned, this deed of October 25th, 1919, is the first indication of any claim on the part of the defendants' grantors to any part of the original Frank H. Ives lot. But if Rollin S. Ives made any such claim in 1919, he was not willing to warrant it by asserting it unqualifiedly in this deed, or to make any adverse claim on the record which was inconsistent with the description of the premises in the deed from Wesley by which he, himself, had taken title, for he adds the alternative phrase, "or as otherwise bounded as of record may appear"; thus incorporating by reference the original description of the Wesley lot.

Reader, within a week, conveyed by warranty deed to Swiatek by the same description of bounds and measurements, "or however otherwise bounded and described as of record may appear"; and Swiatek, April 6th, 1920, conveyed by warranty deed to Cher-

niack by the same description with the same alternative reference to the prior deeds of record.

It thus appears that between October 25th, 1919, and April 6th, 1920, the defendants' predecessors in title put on record the claim that the east bound of the premises conveyed was forty feet in length, and then washed their hands of any responsibility for making it by the alternative description above quoted. Cherniack, on August 19th, 1921, conveyed the premises to the defendants by the metes and bounds last quoted, but without any qualification, so that the defendants' claim was first unqualifiedly asserted of record, in August, 1921, after the plaintiffs had taken title from Cloonan in April, 1921.

We are of opinion that on the face of the exhibits the record title to the premises north of the original south boundary line of the lot conveyed by Franklin T. Ives to Frank H. Ives, is in the plaintiffs.

The finding that the old stone wall is the true boundary line between the plaintiffs' and defendants' lots, has no other support in the deeds introduced in evidence than the description of the east bound of the defendants' lot as forty feet in length; and this, as already pointed out, is inconsistent with the alternative description incorporated by reference in the same deeds. The Cherniack deed to the defendants, being later in date than the plaintiffs' deed from Cloonan, is of no importance in so far as it purports to convey more land than was conveyed to Cherniack by the Swiatek deed, because there is no finding that Cloonan had been ousted of his actual or constructive possession as holder of the record title down to the original boundary line running at right angles to Dayton Place, at the time he deeded to the plaintiffs.

The finding of the trial court, that "all of the land included in the boundaries of the defendants' deed was

located south of said stone wall and on land which had been used in connection with the house located upon the defendants' land continuously for more than thirty-five years," is not a finding that all of the land south of the stone wall had been continuously, adversely, openly and exclusively used by the defendants and their predecessors in title for fifteen years or more before the date of the trespass complained of. The finding falls very far short of a finding of adverse possession for the statutory period. And we may add that we discover nothing in the testimony or exhibits which would have justified such a finding of adverse possession. There was testimony that the stone wall had been there thirty-five years, and that would carry it back far beyond the original division of the whole tract by Franklin T. Ives in 1907. The wall is not mentioned in any of the deeds, and could have no possible significance as a boundary until the division of the tract in March, 1907. Even then Franklin T. Ives reserved to himself the life use of the whole tract, and hence no adverse possession by one of his grantees against another could begin until his death, and the date of his death is not fixed otherwise than by State treasury receipts dated April 18th, 1910, acknowledging payment of transfer tax received from his estate. It does not affirmatively appear that fifteen years had elapsed after Franklin T. Ives' death, and before this action was brought in June, 1923. The testimony tending to show possession of any kind by any of the defendants' predecessors in title was quite insufficient to establish adverse possession. One witness testified that the stone wall was "treated as a boundary line," but for how long he did not remember. Scotnickie and Kowalski testified that they bought the land as forty feet on the east bound, and that there were clothes poles on the *locus* in dispute when they bought it. None of the

defendants' predecessors in title were called as witnesses. We are of opinion that the trial court erred in settling title to the land south of the stone wall and north of the original right angled boundary, in the defendants.

It does not follow that the plaintiffs were entitled to judgment on the first count, which sounds in trespass. In actions of that character, the plaintiff must prove either that he was in actual, exclusive possession of the *locus,* or that he was in constructive possession by virtue of title and absence of actual exclusive possession by another. *Radican* v. *Hughes,* 86 Conn. 536, 545, 86 Atl. 220. The two defendants testified that they were in possession of the *locus* under a claim of ownership and right to exclusive possession before they began to build the garage in question, and although there is a conflict of evidence as to the exclusive character of their possession, the court has found that they were in exclusive possession, and we cannot disturb that finding so made.

The finding is corrected by erasing paragraphs six, eight and nine. The conclusions of law embodied in paragraphs two and ten are found to be unsupported by the evidence. Costs in this court to be taxed in favor of the plaintiffs.

There is error, the judgment is set aside and the cause remanded with direction to enter judgment for the defendants on the first count of the complaint, and on the second count to enter judgment quieting and settling the title to all of the premises north of the south boundary of the lot described in plaintiffs' Exhibit 8, in the plaintiffs.

In this opinion the other judges concurred.