ANTHONY FASANELLI ET AL. *v.* NUNZIO TERZO

CITY OF HARTFORD *v.* NUNZIO TERZO

BALDWIN, C. J., KING, MURPHY, SHEA and ALCORN, Js.

Argued January 3—decided February 26, 1963

*William R. Moller,* with whom were *Edmund T. Curran* and, on the brief, *J. Ronald Regnier* and

*Robert F. Taylor,* for the appellant (defendant in each case).

*William R. Davis,* with whom were *Pasquale R. Ierardi* and, on the brief, *Leon RisCassi,* for the appellee (named plaintiff in the first case); with them, on the brief, were *Frank E. Dully* and *Michael A. Connor, Jr.,* for the appellee (plaintiff city of Hartford in each case).

MURPHY, J.  The plaintiff Anthony Fasanelli sustained injuries when the police cruiser which he, as a member of the Hartford police department, was operating in pursuit of a speeder collided with an automobile operated by the defendant. Fasanelli brought suit to recover damages. The city of Hartford intervened to recover for the workmen's compensation it had paid to Fasanelli. In a second action, the city sought to recover for the damage to the police cruiser. From the judgments rendered on verdicts for the plaintiffs, the defendant has appealed. For the purpose of these appeals, we shall discuss the issues in the first case only, since the judgment in the second case is dependent on the outcome of the first.

From the undisputed facts, the jury could have found the following: At about 1:15 a.m. on May 11, 1957, Fasanelli, hereinafter called the plaintiff, was driving west on Park Street in Hartford, in pursuit of an automobile going at an excessive speed, when his cruiser collided with the defendant's westbound automobile in the southerly half of Park Street as the defendant was turning left to enter Bartholomew Avenue. Both Park Street, fifty feet wide, and Bartholomew Avenue, thirty-two feet wide, are two-way streets. Bartholomew

Avenue intersects Park Street only from the south. Traffic at the intersection is controlled by an overhead traffic light which was green for westbound traffic at the time. The area is well lighted by street lights. Park Street is straight and level for approximately 500 feet east of Bartholomew Avenue and has solid white lines in the center to separate the eastbound and westbound traffic lanes, and broken white lines to delineate the two traffic lanes in each direction. It was raining, and the streets were wet. There was no eastbound traffic on Park Street. Just before the collision, the speeding car passed to the right of the defendant and splashed his car with water.

In addition, the plaintiff offered evidence to prove and claimed to have proved the following: He had turned on his siren and dome light a quarter of a mile east of Bartholomew Avenue and had them in continuous operation until after the collision, when he shut off the siren. The dome light remained on, and so did the headlights, which had been lighted at all times and which cast a 200-foot beam on the highway. After the plaintiff turned on the siren and the dome light, he passed two cars which had pulled to the right to let him by. He then saw the defendant's car ahead of him and astride the broken white line between the westbound lanes; the speeding car was at that time passing to the right of the defendant's car. The defendant then started to pull his car to the right and suddenly, without signaling, turned left into the path of the plaintiff's car, which was about to pass on the left. The right front of the cruiser struck the left side of the defendant's car, and the impact forced both cars across the intersection to its southwest corner. Neither car had entered the

intersection before the impact, which occurred approximately ten feet east of Bartholomew Avenue and thirteen feet north of the south curbline of Park Street. The plaintiff was in pursuit of a fleeing law violator who was driving at a speed of about sixty-five miles per hour. The plaintiff was going about forty miles per hour. As his siren was sounding and the dome light was flashing, he had the right of way over the defendant, but the defendant failed to drive to the right and stop his car on the plaintiff's approach. The defendant, instead, turned to the left before reaching the intersection.

The defendant's additional claims of proof were as follows: He was on his way home, proceeding at about twenty miles an hour where thirty miles an hour was permitted, and as he approached Bartholomew Avenue he put on his signal light for a left turn. The speeding car passed him on his right. He looked into his rear-view mirror, saw no red lights and heard no siren. He was close to the center of the road. The collision occurred while the plaintiff was passing the defendant to the left of solid white lines and was passing within 100 feet of an intersection. There was room for the plaintiff to pass to the right of the defendant without danger of collision. The plaintiff was operating his car with only the parking lights on.

The defendant has filed an assignment of errors, claiming error in the denial of the motion to set aside the verdict, in the refusal to charge as requested, in the charge as given, in certain rulings on evidence, and in the finding. Many of the claimed errors are too trivial to deserve discussion. This is particularly true of most of the twenty specific exceptions taken to the charge. The attempted ana-

tomical dissection of the charge at the conclusion of its delivery detracted from the force of the exceptions which had merit and by which errors in the charge could have been corrected if those exceptions had not been submerged in the inconsequential. We devote our attention to the exceptions assigned as error which have merit and to certain rulings on evidence.

Basically, the charge as given included the material portions of the defendant's requests to charge. The failure of the court to charge in the exact language of the requests does not constitute error. *Jacobs* v. *Swift & Co.*, 141 Conn. 276, 280, 105 A.2d 658. Under the specifications of negligence in the complaint and of contributory negligence in the special defense, as well as the claims of proof which the parties maintained had been established by the evidence, it was necessary for the court to read to the jury the applicable portions of a number of statutes. In the main, the charge substantially covered the questions of law involved. Its fault lay in an inadequate application of the many seemingly inconsistent statutory requirements to the conflicting facts claimed by the parties. It was of little assistance to a jury of laymen to learn, without being shown how the matter was related to the facts, that one statute required a driver to pull to the right and stop at the sound of a police car siren, another statute required him to make a left turn from the part of the right side of the highway nearest the center line, and still another statute in certain circumstances permitted overtaking traffic to pass him on his right.

The plaintiff relied mainly on the right of way to which he claimed he was entitled under § 14-283 of the General Statutes and on the defendant's duty

under that statute to drive as near as practicable to the right side of the highway and stop. After reciting the pertinent provisions of § 14-283, the court went on to say: "Pursuant to this statute, the operator of a police cruiser is granted the right of way over all other vehicles or traffic upon any private or public way, and pursuant to this statute the driver of a private passenger vehicle must immediately drive or operate his vehicle to the right side of the highway and grant the way to the emergency vehicle with its bell or siren sounding or operating. If you find that the defendant Terzo failed to grant the right of way to the emergency, that is, the police, cruiser in the manner prescribed by the statute, then this would constitute a violation of the statute and such a violation would be negligence as a matter of law as I have already indicated to you." The effect of this instruction was to indicate to the jury that the statute imposed an absolute duty on the defendant to turn to the right, and to eliminate from the jury's consideration the practicability of the defendant's pulling over to his right to allow the plaintiff to pass on his left—if the jury believed the claim of the defendant that he was already in the left westbound lane preparing to make a left turn for which he was signaling, all in accordance with the provisions of §§ 14-241(b) and 14-242(a), (b). Thereafter, the court read the following portion of § 14-230, on which the plaintiff also relied: "Upon all highways, each vehicle shall be driven upon the right, except (1) when overtaking and passing another vehicle proceeding in the same direction, (2) when overtaking and passing pedestrians, parked vehicles, animals or obstructions on the right side of the highway [or] (3) when the right side of a highway

is closed to traffic while under construction or repair." The court failed to include in its instruction a further exception in the statute which applies when a vehicle is preparing for a left turn at an intersection.

The defendant has assigned error in the limitations placed by the charge on the application of two statutes, §§ 14-232 and 14-233, which he claimed governed the conduct of the plaintiff in his attempt to take the right of way. The court, calling attention to the defendant's claim that the plaintiff should have passed to the right of the defendant, stated that there was an exception to § 14-232, the statute which requires passing to be on the left, and that the excepting statute, § 14-233, provided that the driver of a vehicle "may overtake and pass upon the right of another vehicle . . . when conditions permit such movement in safety and . . . [w]hen the vehicle overtaken is making or has signified the intention to make a left turn." The court then went on to say that § 14-233 would only apply if the defendant had given a proper signal of his intention to make a left turn. This instruction eliminated from the consideration of the jury the important fact that § 14-233 also applied when the overtaken vehicle was actually engaged in making a left turn.

Section 14-235 prohibits the driving of any vehicle to the left side of the highway when the vehicle is approaching within 100 feet of or crossing an intersection. The court instructed the jury that if they found that the plaintiff had violated that statute and that the violation was the proximate cause of the collision, they could find for the defendant. Immediately following that instruction, the court nullified its application when it charged:

"On the other hand, I must remind you, however, that under the statute . . . the plaintiff had a right to expect that the defendant would move his vehicle to the right and stop it as required by the statute, assuming you find that the plaintiff gave a signal with the siren or that the dome light was on, and the other things required by the statute. So that in considering a violation of this statute by the plaintiff you must also consider with it the right the plaintiff had to expect the defendant to move his vehicle to the right side of the highway and to stop. I leave that with you for you to determine." Section 14-283, which grants the right of way to a police or other emergency vehicle, requires it to be equipped with a distinctive, audible sounding device which is sending forth a loud and adequate warning of the vehicle's approach. No mention is made in § 14-283 of the use of a dome light. Under the conflicting claims of proof, the jury could have found that although the dome light on the cruiser was in operation prior to the collision, the plaintiff's siren was not being sounded. If the jury were to reach that conclusion, the use only of the dome light would not be sufficient to enable the plaintiff to rely on the right of way provisions of § 14-283. As the charge must be considered from the standpoint of its effect on the jury in guiding them to a proper verdict, the errors in it to which we have alluded were material and require a new trial. *Steinecke* v. *Medalie,* 139 Conn. 152, 157, 90 A.2d 875; Maltbie, Conn. App. Proc. § 91.

During the direct examination of the defendant, who had been called as a witness by the plaintiff, the defendant testified that the point of collision was within the intersection, near the southwest corner of Park Street and Bartholomew Avenue.

He also testified that he had signed and filed an accident report with the motor vehicle department, and he identified a photostatic copy as being a copy of his report. He had been called by the plaintiff under § 52-178 of the General Statutes, which permits a litigant not only to use his adversary as a witness but, under a 1959 amendment, to examine him as an adverse witness. The plaintiff offered the motor vehicle report in evidence as an exhibit to show inconsistencies between the testimony of the defendant in court and the statements which he had made in the report. In the examination of the defendant, it developed that the report had been filled out by an attorney whom the defendant had consulted and that he did not know who had made the diagram on the report. The defendant objected to the admission of the report because it had not been filled out by him personally and because the plaintiff was seeking to impeach his own witness. The court overruled the objections and admitted the document in evidence. The ruling was correct. *Jacobs* v. *Connecticut Co.,* 137 Conn. 189, 191, 75 A.2d 427; *Guarnaccia* v. *Wiecenski,* 130 Conn. 20, 25, 31 A.2d 464. The defendant was required to file his written report of the details of the accident with the motor vehicle commissioner within forty-eight hours after the accident. General Statutes § 14-108. The defendant had identified the report as his own, and the fact that someone else had filled in the body of the report for him did not render it inadmissible. See *Russo* v. *Metropolitan Life Ins. Co.,* 125 Conn. 132, 136, 3 A.2d 844.

The plaintiff was not precluded from using the accident report to show inconsistencies between the defendant's testimony in court and his prior statements. *State* v. *Lopez,* 46 N.M. 463, 467, 131 P.2d

273. One purpose of the 1959 amendment to § 52-178, allowing an adverse party to be examined to the same extent as an adverse witness, was to permit what amounts to cross-examination of the adverse party and contradiction of his testimony. *Kovich* v. *Church & Church, Inc.,* 267 Mich. 640, 644, 255 N.W. 421; 98 C.J.S., Witnesses, § 367. "There can be no question as to either the relevancy or admissibility of any statement upon any material fact made by the . . . [witness] in the report which was contradictory to his testimony upon the trial." *Banks* v. *Connecticut Ry. & Lighting Co.,* 79 Conn. 116, 121, 64 A. 14. "The purpose of cross-examining . . . [an adverse] witness is to have the advantage of more searching methods of examination, by leading questions and the like, and by that means to enable a party to elicit information which otherwise might not be forthcoming." *Fox* v. *Schaeffer,* 131 Conn. 439, 447, 41 A.2d 46.

Later in the examination of the defendant by the plaintiff, the defendant provided, at the request of the plaintiff, a statement which consisted of four pages, upon each of which the signature of the defendant appeared and which he admitted signing. With the statement, there was a diagram which the defendant testified he had not seen. The diagram did not bear the defendant's signature, and there was nothing on it to show that the defendant had any part in its composition. The plaintiff offered the diagram, but not the statement, as an exhibit, and the court admitted it over the defendant's objection that it was not his diagram. The only reason advanced by the plaintiff for its admissibility was that it was attached to the defendant's signed written statement. Upon this state of the record, the objection was well taken, and the dia-

gram should have been excluded. See *Casalo* v. *Claro,* 147 Conn. 625, 630, 165 A.2d 153.

Upon cross-examination of the defendant by his own counsel, the defendant sought to introduce in evidence a sketch of the scene and the position of the cars involved. He had made this sketch at home within two hours after the accident. He claimed that the sketch was admissible (1) to distinguish it from the diagram on the motor vehicle report and the diagram which accompanied his written statement, (2) to affect the credibility of those two diagrams, and (3) as a sketch made by him at the time, under the rule of cases such as *Hall* v. *Sera,* 112 Conn. 291, 295, 152 A. 148. The court sustained the objection to the admission of the sketch. Although this ruling may have been technically correct because of the particular reasons advanced for the admissibility of the sketch, it would have been admissible, in the discretion of the court, if it was illustrative of the witness' testimony, as it appears to have been. *Capone* v. *Sloan,* 149 Conn. 538, 543, 182 A.2d 414; see also *Dawson* v. *Davis,* 125 Conn. 330, 332, 5 A.2d 703.

The other assignments of error do not require discussion.

There is error in both cases, the judgments are set aside and new trials are ordered.

In this opinion the other judges concurred.