BERNICE B. FEUER ET AL. *v.* GROVE W. HENDERSON ET AL.

COTTER, C. J., BOGDANSKI, PETERS and HEALEY, Js.*

Argued April 8—decision released July 8, 1980

*Bertlen F. Turner,* for the appellant (defendant Harold C. Vienot).

---

* By agreement of counsel the case was argued before and decided by four judges.

*Russell L. Post, Jr.,* with whom, on the brief, was *Jewel A. Gutman,* for the appellees (plaintiffs).

COTTER, C. J. The plaintiffs brought this action pursuant to the provisions of General Statutes § 47-31 to settle title to a parcel of land in which they claimed ownership, located on the easterly side of Southeast Road, formerly Seventh Highway, in New Hartford, containing 38.45 acres as shown, inter alia, on two maps which were introduced as exhibits at trial. Judgment was rendered against all the nonappearing defendants who it was alleged might appear to have an interest in the described property. The sole remaining defendant Harold C. Vienot owned land south of the parcel at issue and claimed title to 20.59 acres of the 38.45 acres to which the plaintiffs claim title. The trial court rendered judgment for the plaintiffs and the defendant Harold Vienot has appealed.

A substantial amount of evidence was presented by the parties at the trial, consisting of some 35 exhibits including maps, sketches, probate documents, tax sales and deeds together with considerable testimony from many witnesses. The memorandum of decision, when examined in the light of the evidence presented to the trial court, discloses the following facts: The plaintiffs' chain of title to the disputed parcel extends back to 1857. At that time the 20.59 acre parcel in question formed a part of a large farm, commencing with the ownership in Gordon W. Henderson. The so-called Henderson farm resulted from the amalgamation of land conveyed to Gordon W. Henderson in three warranty deeds, which are recorded in the New Hartford land records: One piece, 15 acres, was conveyed to Gordon W. Henderson by Gordon Henderson on

April 12, 1833; another piece, 20 acres, was acquired from Samuel and Josiah Goodsell on November 11, 1854; and the third parcel, consisting of 1 acre, was conveyed to Gordon W. Henderson by the Goodsells in 1857. As described in the three warranty deeds, the boundaries of the various tracts encompassed a total of approximately 36 acres and referred to various abutting owners and courses.

By means of several transfers and conveyances of the property, variously described as the "Henderson Farm," "Gordon W. Henderson place" or the "Gordon W. Henderson farm," title was eventually acquired from the Hendersons on October 28, 1892, by Jakobine Strobel who later transferred the property by warranty deed dated May 19, 1897, to Joseph Teufel and referred to the property as "the Gordon W. Henderson farm." The 1892 deed described the property as the "Henderson Farm" containing 14 acres and this description was repeated in the subsequent deeds.

The defendant argues that the parcel of land described as "containing 14 acres more or less" perpetrates a discrepancy in the plaintiffs' chain of title from that time and, since the discrepancy is carried down to the present, it creates a defective title in the plaintiffs as to the 20.59 acre parcel in dispute. The plaintiffs claim, however, that the description of the farm as 14 acres was erroneous because there were no other conveyances out of the chain of title, and that since all deeds refer to the "Gordon W. Henderson place" or the "Gordon W. Henderson farm," it is reasonable to conclude that the entire Henderson farm was conveyed throughout. The defendant admits that the deeds refer to the Henderson farm, that the plaintiffs acquired

their title by conveyance dated December 30, 1966, from Elsie M. Teufel and that the property is described as "land formerly known as the Gordon W. Henderson Farm," but argues nonetheless that the reference to the 14 acres in those deeds creates a "substantial discrepancy between the 38.45 total acreage shown in the plaintiffs' exhibits and the 14 acres referred to in the later deeds."

The defendant also attacks the decision of the court on the basis of the descriptions in the deeds of the plaintiffs' east and west boundaries; he claims that the plaintiffs' chain of title indicates that their property is rectangular in shape and thus "the approximately 21 acres in dispute could not ... be owned by the plaintiffs."

The evidence at trial also disclosed that Pleasant Valentine, the defendant's predecessor in title, acquired from Winsted Savings Bank, in 1896, 100 acres on both sides of the highway. Subsequently, Valentine conveyed a parcel purported to be 75 acres on the east side of Seventh Highway to Stephen Kulich who lost the property through tax liens. This land was divided by two tax collectors' deeds into an easterly half, which was conveyed to Conrad Vienot, the defendant's father, in 1931, and a westerly half, which was deeded to Joseph Boulli in 1929. The defendant eventually acquired both tracts through various conveyances and estates. When the defendant's total claimed area is considered, including the disputed area of some 20 acres, he would own less than 75 acres, or approximately 67 acres. Without the disputed area, the defendant would have approximately 46.5 acres. It is thus not possible to reconcile the respective claims of the plaintiffs and the defendant as to acreage.

Thus, it is apparent that the pivotal questions in this case concern the chains of title of the parties and whether the various conveyances adequately resolve the controversy as to the location of an abutting line which would be the plaintiffs' southerly boundary and the defendant's northerly boundary. We have held that where the issue was whether the land was included in one or the other chain of title, it was a question of fact for the court to decide. *Byard* v. *Hoelscher,* 112 Conn. 5, 11, 151 A. 351. Similarly, we have held that in an action to settle title to lands and boundaries between parties, where the testimony of witnesses as to the location of the land described in deeds is in conflict, it becomes a question of fact for the determination of the court which may rely upon the opinions of experts to resolve the problem and it is the court's duty to accept that testimony or evidence which appears more credible. *Ball* v. *Branford,* 142 Conn. 13, 17, 110 A.2d 459; *Morgan* v. *Keefe,* 135 Conn. 254, 258, 63 A.2d 148.

Three surveys of the disputed parcel were admitted in evidence as full exhibits. Edward F. Reuber, a licensed, certified land surveyor, prepared a map of the plaintiffs' property and testified that he researched the land records of the disputed property and found no records or deeds which suggested that the defendant Vienot had title to the 20.59 acre portion or that there was a conveyance out of the plaintiffs' chain of this particular parcel. The Reuber map was based on his examination of the land records, evidence of the stone wall and fence line along the southern boundary, and the consistent jog in one of the boundaries. He also made a sketch, which was introduced as a full exhibit, that showed the boundaries of the Henderson farm together with

those of other adjoining owners.[1] Reuber also testified that his map, which revealed the plaintiffs' property to be approximately 38.45 acres, would be a reasonably close approximation of the size of the Henderson farm derived from the three deeds existing in 1857 in the plaintiffs' chain of title.

Another survey, prepared and certified by civil engineers in 1930 for Joseph H. Boulli, one of the Vienots' predecessors in title, and recorded on the New Hartford land records, supports the plaintiffs' claim and shows their southerly boundary line as running "980 feet plus" along the stone wall. This conforms with the survey made by Reuber. A third map or survey of the defendant's property was made in 1973 at the request of the defendant and certified as substantially correct by Francis C. Messenger, L. S. This survey also agrees with that made for the plaintiffs by Reuber, and supports the boundary line as claimed by the plaintiffs. Although the survey was made at the request of the defendant, he claims the survey was erroneous and would incorrectly give him title to only 45 or 46 acres rather than 75 acres.

Where the ultimate question was whether the tract in controversy was included in one or the other chain of title, the issue was one of fact to be decided

---

[1] Furthermore, Reuber testified as an expert witness that where the deeds and a wall or fence line conform to each other it is good evidence of a boundary. See *Bond* v. *Benning*, 175 Conn. 308, 312–13, 398 A.2d 1158. Since old deeds and early surveys of the Henderson farm describe its southernmost boundary as a stone wall which exists and marks the boundary between the land of the plaintiffs and the defendant, they support the plaintiffs' claim of ownership. *Bridgeport Hydraulic Co.* v. *Sciortino*, 138 Conn. 690, 694, 88 A.2d 379. Proprietors of land are required to maintain sufficient fences to secure their particular fields. General Statutes § 47-43; *Hine* v. *Wooding*, 37 Conn. 123, 127.

by the trier. *Byard* v. *Hoelscher,* 112 Conn. 5, 11, 151 A.2d 351. The trial court's finding that the tract was included in the deeds under the plaintiffs' claim thus must stand if there was reasonable evidence to support it, provided the court violated no rule of law or logic. Id., 11–12. In light of the exhibits, the evidence and the observation made by the trial judge after he visited the property in dispute that "a stonewall shown on earlier surveys and described as the southernmost boundary of the 'Gordon W. Henderson Farm' still exists and marks the boundary between the plaintiffs and the defendant," we cannot disturb the conclusion of the trial court. *Bridgeport Hydraulic Co.* v. *Sciortino,* 138 Conn. 690, 693–94, 88 A.2d 379; *Berger* v. *Guilford,* 136 Conn. 71, 79, 68 A.2d 371; cf. *Gura* v. *Scotnickie,* 102 Conn. 83, 90, 128 A. 22. On prima facie proof by the plaintiffs in an action to quiet title that they had fee simple title, the burden of showing the contrary rested on the defendant. *Borden* v. *Westport,* 112 Conn. 152, 166, 151 A. 512. The trial court did not err in failing to find that the defendant met his burden.

At oral argument the defendant also sought to rely on the seemingly equitable argument that if the plaintiffs prevail they will have 38.45 acres, although the deeds after 1892 recite the land conveyed as the Henderson farm to be 14 acres, while the defendant, who claims 75 acres, will have only 45.65 acres. Hence, the defendant claims if the disputed area is added to Vienot's property "then his total comes to about 67 acres, which is reasonable when you consider it to be 75." The defendant also suggests in his brief that there was probably a sale to Valentine, a predecessor of the defendant, and that "there is an unrecorded deed" from Henderson

to Valentine. Of course we cannot retry the case and decide the dispute on a balancing test and speculation about unrecorded deeds. Furthermore, we have said that any discrepancy between acreage designated in deeds and that determined by a surveyor, as found by the court, can be accounted for by the fact that many old deeds contain imprecise measurements. *Bond* v. *Benning,* 175 Conn. 308, 312, 398 A.2d 1158. The court was not in error in its conclusion that the plaintiffs had established their ownership of the land in question by record title.

## II

The defendant offered in evidence a copy of a map bearing the legend, "Land Plan Showing Four Stations at Nepaug Reservoir and Vicinity," dated August, 1933, revised 1937, 1941, 1946, number 1530. The map was certified by the deputy district clerk of the Metropolitan District (hereinafter the commission) and was offered through a witness who was project engineer, Water Bureau, of the commission. The witness stated that the commission, in 1930, maintained "reservoirs in the towns of Barkhamsted, New Hartford, East Hartland, and in that general area, [the] western part of the state." He also testified that the "map was prepared to show the type and extent of the trees that were planted by the Water Bureau." He stated that the original intent of the map was as a title blockage and was a copy of other maps that were made at about the same time because "[t]he only surveys that we had were old surveys going back to 1915. They were status surveys and were similar to those maps, which do not show bearings or distances." The defendant claims that the map was admissible for three alternative reasons. First, the defendant

claims admission under General Statutes § 52-165 which provides for admission of entries or records of all corporations and all public officers, where entries or records are made of their acts, votes and proceedings, by some officer appointed for that purpose. The map does not meet the description in the statute as either a vote or a proceeding. Furthermore, to render it admissible under this statute by virtue of the certificate of the deputy district clerk, it must appear that the record made was of a fact which it was his duty to determine and record. Generally, an official certification of facts drawn or gathered from a public record is a mere legal conclusion or opinion of the certifying officer and is inadmissible as evidence; such a certificate is admissible only as evidence of the truth of facts certified, provided express statutory or judicial authority to make such a certification is shown to exist. *Russo v. Metropolitan Life Ins. Co.*, 125 Conn. 132, 138–39, 3 A.2d 844. No foundation was laid to support admission of the proffered exhibit under the statute.

The defendant also claims the admissibility of the exhibit under General Statutes § 52-180 which provides for the admission of a business entry in evidence if the entry "was made in the regular course of any business, and that it was the regular course of such business to make such writing or record at the time of such act, transaction, occurrence or event or within a reasonable time thereafter." *Bonner v. Winter,* 175 Conn. 41, 43, 392 A.2d 436. The defendant did not lay a foundation or make an offer of proof which would meet the statutory prerequisites to permit the admissibility of the map in order, as he then claimed, to establish the boundaries of the Boulli, Vienot and Teufel properties. A record, for instance, may be admissible but this does not mean

anything and everything contained in the record is admissible since the court must consider the real business of the commission in this case as well as the pertinence and relevance of the entry to its business. This is a preliminary question of fact for the trial judge which, if reasonably reached, must stand. The defendant finally claims that the map was admissible as a sketch supposedly under the rule of such cases as *Capone* v. *Sloan,* 149 Conn. 538, 543, 182 A.2d 414, and cites *Dawson* v. *Davis,* 125 Conn. 330, 5 A.2d 703, for its admission. In *Dawson,* however, the court admitted the sketch " 'for the purpose to enable the court to visualize the general situation' " and not " 'for the purpose of showing the boundaries of any particular area of land shown on the map—the sketch—.' " Id., 333. The court did not abuse its discretion in ruling as it did; *Fasanelli* v. *Terzo,* 150 Conn. 349, 360, 189 A.2d 500; and we find no error in the ruling of the court in excluding the map. *Maggi* v. *Mendillo,* 147 Conn. 663, 667, 165 A.2d 603.

There is no error.

In this opinion the other judges concurred.