[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff in this four count complaint alleges trespass by CT Page 3734 the defendants onto their property, a conversion of trees on said property, unjust enrichment therefrom, and in count three, claims compensatory and treble damages pursuant to General Statutes 552-560.[1]
By way of special defenses the defendants claim that the plaintiff's deeded title to the property is void because his predecessors in title had been ousted from possession, (General Statutes47-21)[2] during the period February 23, 1889 to December 4, 1986.
Trespass
In order to establish trespass, the plaintiff must prove title, possession and the absence of actual exclusive possession in another. Lake Garda Improvement Assn. v. Battistoni, 160 Conn. 503,516-517 (1971).
The plaintiff acquired a parcel of land from the New England Bank and Trust Company on December 4, 1986 by quitclaim deed. The grantor bank had acquired the property by way of foreclosure from Matthew J. Gineo and Alice E. Gineo in 1980. The description of the property was as follows:
A certain triangular piece or parcel of land situated on the easterly side of Hickory Lane in the Town of Mansfield, County of Tolland, State of Connecticut, containing 16 acres, more or less, and bounded or described as follows:
 Easterly: by land now or formerly of Earnest and Henry Crane;
Southerly: by land now or formerly of Isaac T. Crane; and
Westerly: by Hickory Lane.
The foregoing description was generally used in the chain of title going back to 1914.
In attempting to locate the land he was buying, which is rural, wooded and without readily delineated boundaries, Peters obtained a copy of the assessor's map. (Plaintiff's exhibit 12). The assessor's map indicates the property contains approximately 22 acres, and it does not depict the property as triangular in shape. The attorney who drafted the deed from the bank to Peters used the CT Page 3735 description in the chain of title to be consistent with those deeds. In any event, using the assessor's map, the plaintiff and his son (who has some, albeit limited, experience in reading land maps in his background as an architect and in land conservation planning), walked the land several times finding stone markers, a stake, fencing and stone walks which they estimated to be the boundaries. These markers were consistent with a survey subsequently done indicating the plaintiff's easterly boundary to be where he and his son believed it to be at the time. The plaintiff paid taxes on the tract as shown on the assessor's map. He walked the property periodically, usually several times a year, and until 1992 it remained undisturbed woodland.
In 1992, Peters hired Towne Engineering, Inc., a civil engineering and land surveying firm, to prepare a survey of the land to "A-2" standards. There was no evidence that such a survey had previously been undertaken. James Kasierski of Towne Engineering, Inc. prepared the survey. Kasierski is a professional land surveyor with twenty-eight years experience in the field. He searched the titles of the property in question and the chain of title of the abutters to the east back to the 1800's. He checked land records, deeds and probate records in his search. He concluded that the plaintiff had record title to the tract of land as shown in his survey (plaintiff's exhibit 3). There was no evidence to contradict the accuracy of Kasierski's survey and the court finds that the plaintiff has the record title to the property as shown in plaintiff's exhibits.
Despite the foregoing record chain of title, the defendants ask the Court to interpret the deeds from the plaintiff's predecessors in title as intending to convey a triangular piece of approximately eight acres in size. They claim that since the parcel as actually surveyed is not really triangular, the original grantors must have intended to convey less than that now claimed by the plaintiff.
The deeds in the chain of title are inaccurate as to acreage and as to description. It is not uncommon for old deeds to be imprecise, and that fact frequently accounts for discrepancies between acreage designated by those deeds and actual acreage determined by a surveyor. Feuer v. Henderson, 181 Conn. 454, 461
(1980). While the stated acreage may well be the least reliable of all descriptive particulars in a conveyance, 23 Am.Jur. 2nd Deeds, 300, Page 275, it has some probative value and should not be totally ignored. In determining true boundaries, according to CT Page 3736 Kasierski, the abutters' property lines are the most significant indicators of ownership. In this case Kasierski traced the recorded deeds of the abutters — the defendants and found no recorded deeds to indicate that the property they claim as theirs was ever conveyed to them.
The plaintiff has record title to the land as surveyed by Kasierski. The assessor's map is generally consistent with Kasierski's survey and the plaintiff has been paying taxes on the parcel surveyed as belonging to him.
By way of special defense the defendants claim that even if the plaintiff has title to the land by deed, by operation of the law of ouster his record title is invalid. (General Statutes 47-21). The evidence required to prove ouster is the same as that required to show adverse possession. Wadsworth Realty Co. v. Sundberg, 165 Conn. 457, 465 (1973). The defendants carry the burden of proving by clear and convincing evidence an open, visible and exclusive possession, under a claim of right with the intent to use the property as their own, without the consent of the owner, for a period of fifteen years without interruption. General Statutes 52-575, Ruggerio v. Town of East Hartford, 2 Conn. App. 89,96 (1984).
The defendants introduced evidence from members of the Pearl family who have owned property abutting the disputed piece since 1942. The Pearls operated a dairy farm and had pasture land for their cows abutting the disputed piece. The land in dispute was never used as pasture. It was wooded and occasionally members of the Pearl family would ride a horse onto it, until approximately 1965. Some years they would go onto the land to obtain princess pine to make Christmas decorations. Clarence Pearl occasionally cut a tree to make fence posts, but has not done so since the early 1980's. He also hunted on the land regularly.
The Pearl family since 1942, including the present defendants, believed the disputed land was theirs and the use they did make of the property was under a claim of right with the intent to use it as their own. But even recognizing the fact that the land is an unimproved woodlot on an abandoned unpaved road and rural in nature, and that the acts of dominion must be considered in the light and circumstances of the location and nature of the property, the defendants have failed to show exclusivity of use uninterruptedly for fifteen years. Lucas v. Crofoot, 95 Conn. 619,626 (1921), Roche v. Fairfield, 186 Conn. 490, 502 (1982). CT Page 3737
Clarence Pearl testified that "tons of people" used the land for recreational purposes. He described it as "like a state park." It was used regularly by hikers, bird watchers and hunters. Neither defendants nor their predecessors who testified ever gave those people permission to use the land, nor did they order them off. The land was never posted against trespassers and the plaintiff (and, logically, the plaintiff's predecessors) paid the taxes on it. Although the defendants believed they owned the property in question, their very sporadic use of the property was inadequate and insufficient to suggest a use open and hostile to the owners, and neither was their use exclusive. The defendants have not proved, by clear and convincing evidence, that the plaintiff's ownership of the property is invalid by reason of ouster.
The Court finds the defendants have trespassed on the plaintiff's property, and cut and removed trees therefrom.
The defendants conceded that they entered onto the property in question to log trees. Some 300 trees were cut and sold according to Clarence Pearl, for between $15,000.00 and $20,000.00.
The Court finds the value of the trees cut and removed to be $19,175.42.
From the foregoing the Court finds the issues in favor of the plaintiff on the counts of trespass, conversion and unjust enrichment.
Treble Damages
The plaintiff seeks treble damages pursuant to General Statutes 52-560.
For the reasons discussed above, the Court is satisfied that the defendants were guilty through mistake and believed they owned the land from where the trees were removed, and declines to award treble damages.
Clarence Pearl did testify that he did some timbering even after the notice to stop, but that he did so on advice of counsel and only a small number of trees were removed thereafter anyway.
Judgment shall enter for the plaintiff in the amount of CT Page 3738 $19,175.42 plus costs.
Klaczak, J.