HIGHSTEAD FOUNDATION, INC. *v.* EDWARD W.
FAHAN ET AL.
(AC 27318)

McLachlan, Gruendel and Dupont, Js.

Argued November 14, 2007—officially released February 12, 2008

*Neil R. Marcus*, with whom was *Barbara M. Schellenberg*, for the appellants (named defendant et al.).

*Edward V. O'Hanlan*, with whom was *Thomas J. Donlon*, for the appellee (plaintiff).

*Opinion*

McLACHLAN, J. The defendants Edward W. Fahan and Heloise L. Fahan[1] appeal from the judgment of the trial court quieting title to a 1.29 acre triangular parcel of undeveloped land located in Redding (disputed parcel)[2] in favor of the plaintiff, Highstead Foundation, Inc. The defendants claim that (1) the court applied an incorrect standard of review in evaluating the parties' title dispute and (2) the evidence did not support the court's conclusion that the defendants had no right, title or interest in the disputed parcel. We affirm the judgment of the trial court.

The facts that follow were either found by the court or are not in dispute. The plaintiff is a nonprofit organization that owns and runs the Highstead Arboretum. The plaintiff and the Harvard University forest project collaborate on research projects and on the dissemination of information pertaining to conservation issues. In 1999, the plaintiff decided to purchase an additional parcel of land in Redding to increase the size of its holdings for such activities. In connection with that

---

[1] Armondo Bonsignore and Mary Bonsignore also were named as defendants in this action. Mary Bonsignore died before the complaint was filed. The plaintiff filed an amended complaint after the trial commenced in which it withdrew its claims against Armondo Bonsignore. The defendants' counsel filed an amended answer, special defenses and counterclaim in response to the amended complaint, in which he withdrew the counterclaim of Armondo Bonsignore. The Bonsignores were no longer parties at trial and are not parties to this appeal. We therefore refer in this opinion to the Fahans as the defendants.

[2] See the accompanying sketch in the appendix. The sketch is not drawn to scale. It is provided solely as a visual aid for the reader.

purchase, the seller, Hjalmar Anderson, had an A-2 survey prepared by Charles Farnsworth, a licensed land surveyor. The survey indicated that the area of the parcel to be purchased was 14.323 acres. The plaintiff took title to the property in July, 2000, by warranty deed referencing the Farnsworth survey.

The defendants own a tract of land adjacent to and on the westerly side of the property that the plaintiff purchased from Anderson in 2000. Edward W. Fahan initially purchased his property from Howard C. Platt in 1951. He took title by warranty deed, which indicated that the land was five acres in size, more or less. By straw deeds recorded in 1954, title to the property was conveyed to the defendants in survivorship. In 1986, Edward W. Fahan quitclaimed a portion of that property, "two and one-half . . . acres, more or less," to Heloise L. Fahan. Accordingly, at the time of trial, a portion of the original tract conveyed to Edward W. Fahan in 1951 was held by the defendants in survivorship, and a portion of that tract was held by Heloise L. Fahan individually.

At some point in 2003, the defendants became aware of the Farnsworth survey, which indicated that their eastern border ran in a southwesterly direction. They retained the services of a surveyor, Paul Brautigam, to determine the easterly boundary line of their property, which they claimed ran in a southeasterly direction. At about that time, they began to post "no trespassing" signs in the disputed area and cleared a path through mountain laurel along their claimed boundary line. When those activities were brought to the plaintiff's attention, the plaintiff was concerned that the disturbances would compromise the ongoing research projects in that area. The plaintiff commenced this action, seeking a declaratory judgment that the defendants had no right, title or interest in the disputed parcel and a temporary injunction preventing them from entering

the disputed parcel while the case was pending before the court.[3] The defendants filed a counterclaim, alleging trespass in the first count and adverse possession in the second count.

During the course of a four day trial, the court heard testimony from several expert and fact witnesses for the plaintiff and the defendants. It also admitted numerous exhibits, including deeds and survey maps from both chains of title. Following trial, the court issued a memorandum of decision, ruling that the plaintiff was the record owner of the disputed parcel and that the defendants had not proved adverse possession.[4]

In that decision, the court found that each side relied on a chain of deeds going back to the nineteenth century. The court noted, however, that at some point, there are inaccuracies in both chains. The "acreage calls"[5] are understated if the disputed parcel is included in the land owned by the plaintiff or the defendants. If the defendants own the disputed parcel, their property would be 6.74 acres, more or less, instead of the five acres referenced in the 1951 and subsequent deeds. If the plaintiff owns the disputed parcel, its property would be 14.323 acres in size instead of eight acres, more or less, as recited in the deeds in its chain of title prior to the 1999 Farnsworth survey.

After noting the substantial tracing efforts of the parties, the court found that the "irreconcilable theories of ownership . . . stand in relative equipoise." In resolving the impasse, the court found that the 1986 quitclaim deed from Edward W. Fahan to Heloise L.

---

[3] The parties entered into a stipulated agreement shortly after the action was commenced, which was approved by the court, granting the plaintiff's application for a temporary injunction that restricted the defendants' access to the disputed parcel on certain terms and conditions. The agreement specifically provided that the terms of the agreement were not admissible at trial and could not be deemed admissions by the parties.

[4] In this appeal, the defendants do not challenge the court's determination that they failed to prove their adverse possession claim.

[5] An "acreage call" is the designated quantity of land specified in a deed. *U.S. Bank National Assn.* v. *Palmer*, 88 Conn. App. 330, 331 n.1, 869 A.2d 666 (2005).

Fahan was a critical piece of evidence that supported the plaintiff's position. The court found that three references in that quitclaim deed, when considered in totality, indicated that the defendants believed in 1986 that their property consisted of five acres with its eastern border running in a southwesterly direction. Accordingly, the court concluded that the plaintiff was the record owner of the disputed parcel. The court rendered judgment in favor of the plaintiff, and this appeal followed.

I

The defendants first claim that the court applied an incorrect legal standard in evaluating the parties' title dispute. Specifically, the defendants argue that the court relied almost exclusively on the 1986 quitclaim deed in its determination that they had no legal interest in the disputed parcel. According to the defendants, the court virtually ignored the evidence of their title as indicated in several warranty deeds and focused instead on a less reliable quitclaim deed.

The defendants mischaracterize the court's finding with respect to the quitclaim deed as being the improper application of a legal standard. In this quiet title action, the plaintiff was obligated to establish its title claim to the disputed parcel by a preponderance of the evidence. See *Remington Investments, Inc.* v. *National Properties, Inc.*, 49 Conn. App. 789, 797, 716 A.2d 141 (1998). The defendants do not claim that the court applied a different standard for its evidentiary review. Instead, they claim that the court's reliance on one quitclaim deed to determine title was an improper placement of more weight on that piece of evidence than on the other exhibits they submitted to establish title.

Whether a disputed parcel of land should be included in one or another chain of title is a question of fact for the court to decide. *Feuer* v. *Henderson*, 181 Conn. 454, 458, 435 A.2d 1011 (1980). In such a determination, it is the court's duty to accept the testimony or evidence

that appears more credible. Id. It is well settled that we review the court's findings of fact under the clearly erroneous standard. "We cannot retry the facts or pass on the credibility of the witnesses. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed . . . ." (Internal quotation marks omitted.) *Palmieri* v. *Cirino*, 90 Conn. App. 841, 846, 880 A.2d 172, cert. denied, 276 Conn. 927, 889 A.2d 817 (2005).

The 1986 quitclaim deed was submitted as a joint exhibit at trial. It, therefore, properly was before the court for its consideration in determining record title to the disputed parcel. The defendants argue, however, that the court should not have relied so heavily on that exhibit when it had more compelling evidence establishing title, i.e., the warranty deeds they submitted as full exhibits. This argument fails for several reasons.

The defendants cite no persuasive authority for their proposition that a quitclaim deed is "not nearly as reliable a tool for determining title as is a warranty deed." They simply recite the definition of a quitclaim deed as set forth in Black's Law Dictionary and indicate that a warranty deed, unlike a quitclaim deed, conveys title with covenants. Here, contrary to the defendants' claim, the court did not rely solely on the quitclaim deed in evaluating the parties' title dispute. The court specifically referred to the tracing efforts of the parties with a chain of deeds going back to the nineteenth century. It was the 1986 quitclaim deed, however, that tipped the scales in favor of the plaintiff's claim to the disputed parcel.[6]

The court found the 1986 quitclaim deed to be persuasive evidence in favor of the plaintiff. Noting that the

---

[6] The defendants claim that the court ignored the warranty deeds they submitted at trial. The memorandum of decision does not state specifically

grantor is one defendant and the grantee is the other defendant, the court indicated that the language in the deed constitutes an admission by the defendants. Our case law supports the court's finding. See *Aczas* v. *Stuart Heights, Inc.*, 154 Conn. 54, 59, 221 A.2d 589 (1966); *U.S. Bank National Assn.* v. *Palmer*, 88 Conn. App. 330, 336–38, 869 A.2d 666 (2005); *Koennicke* v. *Maiorano*, 43 Conn. App. 1, 19–20, 682 A.2d 1046 (1996).

The court then noted that there were three references in the quitclaim deed that militated against the defendants' claim that they owned the 1.29 acre disputed parcel. First, the 1986 deed refers to the two and one-half acre parcel being conveyed as being "part of the property conveyed to the Grantor Edward W. Fahan by Warranty Deed dated February 21, 1951 . . . ." The 1951 warranty deed, admitted as an exhibit at trial, described the property as being five acres, more or less. Second, the 1986 deed refers to a 1974 map of the "Falassa" property,[7] which adjoined that of the defendants. That map was admitted as an exhibit at trial and contains a dotted line showing the apparent eastern boundary on the defendants' property running in a southwesterly direction, which supports the plaintiff's claim as to the location of that boundary. Third, the 1986 deed states that the easterly boundary of the property being conveyed is the center line of the wood road that "bisects" the tract as conveyed to the grantor in 1951. The court noted that the term "bisect," as defined in Webster's Third New International Dictionary, generally means to divide in two equal parts.[8]

what reliance the court placed on those deeds, although it does mention the tracing efforts of the parties. If the defendants believed the decision was unclear in this respect, they should have filed a motion for articulation with the trial court.

[7] The parties agreed at trial that the proper spelling of the last name is "Falasca."

[8] Edward W. Fahan testified at trial that the 1986 deed was executed to facilitate possible future development of the parcel with respect to zoning issues. He also testified that the wood road did not divide the original tract in half. For those reasons, the defendants argue that the general definition of "bisect" does not apply under the circumstances of this case.

Although none of the three references could be considered completely unambiguous, the court found that, when considered together, it made it more likely than not that in 1986, the defendants believed their property to be approximately five acres in size with the eastern border running in a southwesterly direction. That was at a time when no property dispute existed between the plaintiff and the defendants. It was approximately seventeen years later, when the defendants became aware of the Farnsworth survey, that they took a different position and claimed at trial that the eastern border ran in a southeasterly direction.

"In construing a deed, a court must consider the language and terms of the instrument as a whole. . . . Our basic rule of construction is that recognition will be given to the expressed intention of the parties to a deed . . . and that it shall, if possible, be so construed as to effectuate the intent of the parties. . . . In arriving at the intent expressed . . . it is always admissible to consider the situation of the parties and the circumstances connected with the transaction, and every part of the writing should be considered with the help of that evidence." (Internal quotation marks omitted.) *Torgerson* v. *Sarah Tuxis Residential Services, Inc.*, 81 Conn. App. 435, 440–41, 840 A.2d 66, cert. denied, 269 Conn. 903, 852 A.2d 737 (2004). We conclude that the court correctly took into consideration the language of the 1986 quitclaim deed, together with the attendant circumstances of the parties, and that its conclusions were not clearly erroneous.

II

The defendants next claim that the evidence did not support the court's conclusion that they had no right,

---

The court chose not to credit that testimony. "[T]o the extent that the court's findings of fact are dependent on its assessment of the credibility of witnesses, we will not second-guess those findings. The sifting and weighing of evidence is peculiarly the function of the trier. [N]othing in our law is more elementary than that the trier is the final judge of the credibility of witnesses and of the weight to be accorded their testimony. . . . The

title or interest in the disputed parcel. Specifically, they argue that they presented evidence demonstrating that the only reasonable way to draw the boundaries of the properties at issue was in accordance with the survey prepared by their land surveyor, Brautigam. They claim that, given the testimony of their experts and the language in the deeds they submitted at trial, their evidence was more comprehensive and more persuasive.

"The trial court's finding that the [disputed] tract was included in the deeds under the plaintiffs' claim . . . must stand if there was reasonable evidence to support it, provided the court violated no rule of law or logic." *Feuer* v. *Henderson*, supra, 181 Conn. 460. A substantial amount of evidence was presented by the parties at trial, consisting of more than forty exhibits, including maps, surveys, photographs and deeds together with considerable testimony from expert and fact witnesses. The defendants do not claim that there was no evidence to support the court's conclusions; instead, they claim that their evidence was more substantial and comprehensive.

"[I]t is the function of the trial court to weigh the evidence and the credibility of the parties and to find the facts; we cannot retry the case on appeal." *Riscica* v. *Riscica*, 101 Conn. App. 199, 207, 921 A.2d 633 (2007). Here, the court was faced with descriptions of the parties' properties, which, prior to the 1999 Farnsworth survey and the 2004 Brautigam survey, traced their boundaries by reference to abutting landowners. The 1999 Farnsworth survey is an A-2 survey. It was prepared in connection with the sale of the property from Anderson to the plaintiff and not as an exhibit to be used in litigation. The 14.323 acre parcel includes the 1.29 acre triangular tract now claimed by the defendants. The 2004 Brautigam survey, prepared after the

trier is free to accept or reject, in whole or in part, the testimony offered by either party." (Internal quotation marks omitted.) *Menard* v. *Gaskell*, 92 Conn. App. 551, 557, 885 A.2d 1254 (2005).

issue of ownership of the disputed parcel arose, is a compilation plan prepared for the express purpose of depicting the eastern border of the defendants' property. The plaintiff's expert, an attorney who specialized in real estate examination, abstraction and certification, testified that in his opinion, the plaintiff was the record owner of the disputed parcel.

The thrust of the defendants' argument is that the court should have credited their evidence and found in their favor. We conclude that the record contains ample evidence to support the court's conclusion as to the ownership of the disputed parcel and that its factual determinations were not clearly erroneous.

The judgment is affirmed.

In this opinion the other judges concurred.

APPENDIX