869 A.2d 666 (2005)
88 Conn.App. 330
U.S. BANK NATIONAL ASSOCIATION, Trustee, et al.
v.
Frederick W. PALMER.
No. 24870.
Appellate Court of Connecticut.
Argued December 7, 2004.
Decided April 5, 2005.
*667 J. Michael Sconyers, Litchfield, for the appellant (defendant).
William O. Riiska, Lakeville, for the appellees (plaintiffs).
SCHALLER, BISHOP and DUPONT, Js.
BISHOP, J.
In this quiet title action brought pursuant to General Statutes § 47-31, the defendant, Frederick W. Palmer, appeals from the judgment of the trial court rendered in favor of the plaintiffs, U.S. Bank National Association and Francis A. Chaffee, trustees of the H.L. Chaffee Trust. On appeal, the defendant claims that the court improperly (1) construed the "acreage call" in a deed in the plaintiffs' chain of title,[1] (2) attributed admissions to the defendant's predecessor in title, (3) found that the defendant had helped his grandfather to install a wire fence and (4) found *668 that the wire fence was an intended property line.
The record discloses the following facts and procedural history. The land in dispute is located in Sharon and was once part of a larger parcel of land owned by Charles B. Everitt. On April 1, 1879, Everitt conveyed to Giles Skiff by a single warranty deed two pieces of land, with the first piece containing the land in dispute. The deed described the property as follows: "The first piece is bounded Northerly on highway leading from Eben W. Chaffee to Cornwall Bridge about forty six rods to stones on a rock. Thence southerly to South East corner of cider mill lot so called. Thence Westerly in line of said lot to the highway leading from the dwelling of Garry S. Morey to Sharon. Thence Northerly in line of said highway to the first mentioned highway and corner opposite the dwelling of Eben W. Chaffee being the place of beginning. The second piece is bounded Northerly by land of Eben W. Chaffee Westerly by land of Eben W. Chaffee and Gibbs W. Skiff Southerly by highway leading from the dwelling of Giles Skiff to Kent and Easterly by the highway leading from Garry S. Moreys to Sharon, containing in all about forty acres be the same more or less, being land conveyed to me by Joshua B. Chaffee." Giles Skiff(Skiff) conveyed three acres in the northeasterly corner of the first piece to Charles W. Munroe on December 2, 1881. The plaintiffs acquired the remainder of the first piece through subsequent conveyances.
In 1884, Everitt deeded to William B. Northrup a parcel of land adjacent to the first piece of land in the Everitt to Skiff deed.[2] The property ultimately was acquired by the defendant's father, William Lathrop Palmer (W.L. Palmer), who conveyed six acres to William J. Haynes in 1964. The parcels currently owned by the plaintiffs and the defendant are adjacent to one another with the plaintiffs' land lying to the west of the defendant's land. The parties dispute who owned approximately eleven acres, claimed by the plaintiffs, in the south portion of the parcel.
On April 30, 2001, the plaintiffs filed a complaint seeking to quiet title to the disputed parcel of land. On December 14, 2001, the defendant filed a counterclaim alleging that he was the record owner of the land in dispute or, in the alternative, that he had gained ownership of the property by adverse possession. The court conducted a four-day trial in June, 2003. Each side presented expert testimony and survey maps describing the location of the disputed boundary line. Following trial, the court issued a memorandum of decision, ruling that the plaintiffs were the record owners of the disputed parcel and that the defendant had not proved adverse possession.
In its memorandum of decision, the court undertook several steps to ascertain the location of the southeasterly boundary marker of the plaintiffs' land, which is referred to as the "South East corner of cider mill lot" in the Everitt to Skiff deed. First, the court reviewed the language of the deed from Everitt to Skiff and attempted to determine the "expressed intention" of the parties to the deed by looking at known and fixed monuments, courses and distances, and acreage. The court determined that there were no *669 known monuments exposing the location of the cider mill lot. In looking for courses and distances, the court held that the deed contained a clear and unambiguous call for a straight line in a southerly direction and that the defendant incorrectly portrayed the call because the easterly boundary on his map did not run in a straight line. Rather, it ran south, then west and then south again. The court also found that the acreage call on the deed from Everitt to Skiff was not helpful because it was ambiguous and open to several competing interpretations.
The court next looked to other evidence of the grantor's intent outside of the language contained in the Everitt to Skiff deed. The court found that the subsequent 1913 deed from Skiff to Carrie T. Chaffee recited that the parcel in dispute contained "15 acres more or less." The court found that this description was consistent with the plaintiffs' map, which represented the parcel as having approximately 14.5 acres. The court also found that Carrie Chaffee had leased back to Skiff a right to use a spring located in the southerly portion of the property and that a spring existed in the southerly portion of the parcel claimed by the plaintiffs.
Finally, the court found that the defendant's predecessor in title, W.L. Palmer, made admissions in his 1964 deed to Haynes that he accepted the wire fence referenced in the plaintiffs' map as the westerly boundary of his property. The court found that these admissions were consistent with the boundary line described in the plaintiffs' map. On the basis of those findings, the court concluded that the plaintiffs' map accurately reflected the boundary line. On October 21, 2003, the court rendered judgment in favor of the plaintiffs. This appeal followed.
The defendant first claims that the court incorrectly interpreted the deed from Everitt to Skiff when it held that the acreage call for forty acres applied only to the second parcel. We disagree.
"As a preliminary matter, we note that our review of a court's interpretation of the language of a deed presents a question of law. Therefore, insofar as our assessment of the judgment involves the court's interpretation of the deed of conveyance, our review is plenary.... To the extent that the court has made findings of fact, our review is limited to a determination of whether the court's conclusions were clearly erroneous." (Citation omitted.) Torgerson v. Sarah Tuxis Residential Services, Inc., 81 Conn.App. 435, 439, 840 A.2d 66, cert. denied, 269 Conn. 903, 852 A.2d 737 (2004).
The paramount issue at trial was the location of the southeast corner of the cider mill lot. Neither party presented direct evidence of the location of this boundary, and the court stated that knowledge about the disputed location "seems to have been lost to the mists of time." The defendant attempted to prove the boundary line by establishing that the plaintiffs' parcel consisted of approximately four acres through an analysis of the acreage calls in several deeds. The defendant's position was predicated on the finding that both parcels in the Everitt to Skiff deed contained a total of forty acres. Under this assumption, the defendant's expert, William Manasse, testified that in 1829, Joel Chaffee transferred thirty-one acres to Joel St. John Chaffee, and that this parcel, which actually contained thirty-three acres, constituted the entire second parcel in the Everitt to Skiff deed. On the basis of the size of the second parcel, Manasse testified that, after reducing the forty acres in the Everitt to Skiff deed to thirty-three acres, the disputed first parcel in that deed must have constituted only seven acres before Skiff deeded *670 three acres to Munroe. The court, however, determined that the acreage call in the Everitt to Skiff deed was not helpful. Rather, the court determined that the most likely interpretation of this language was that the forty acre call did not apply to both parcels conveyed. On appeal, the defendant challenges this finding and claims that the court's conclusion in this regard is not supported by the evidence.
It is widely recognized that acreage calls are the least reliable interpretation of a description. Koennicke v. Maiorano, 43 Conn.App. 1, 10-11, 682 A.2d 1046 (1996). After reviewing the record, we agree with the court that the acreage call in the deed does not conclusively determine the location of the disputed corner. The court held that although the call, "40 acres be the same more or less," could lead to several interpretations, "the most likely interpretation of the sentence construction in this deed is that the forty acre call refers to an updated estimate of the size of the second piece only." After reviewing the relevant language of the Everitt to Skiff deed,[3] we will not disturb the court's holding. We agree with the court's conclusion that there was not conclusive evidence that the Everitt to Skiff deed contained a total of forty acres, and we agree that the court correctly looked to other evidence of the intent of the grantor to determine the location of the cider mill lot. It is that intent that governs the interpretation of the deeds in this case. See Koennicke v. Maiorano, supra, at 11-12, 682 A.2d 1046.
The defendant next claims that the court incorrectly attributed admissions to W.L. Palmer, the defendant's predecessor in title. We disagree. Our standard of review of a challenge to a court's factual findings is well settled. "[W]e will upset a factual determination of the trial court only if it is clearly erroneous. The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole.... We cannot retry the facts or pass on the credibility of the witnesses. A finding of fact is clearly erroneous when there is no evidence in the record to support it ... or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) Wheeler v. Foster, 44 Conn.App. 331, 334, 689 A.2d 523 (1997).
In its memorandum of decision, after reviewing W.L. Palmer's 1964 deed to Haynes and a map by Charles W. Wilford, the court found "that Mr. Palmer accepted the wire fence (remains of which correspond to the [plaintiffs' asserted] boundary line) as the westerly boundary of his land." The defendant argued that the deed does not directly prove that W.L. Palmer admitted that a wire fence established the disputed boundary line.[4]
The deed and the map taken together could be read to contain admissions *671 that the wire fence on the western side of the property represented a boundary line consistent with the plaintiffs' position. In the 1964 deed, W.L. Palmer described the parcel, in part, as follows: "Beginning at a point marked by an iron pipe in the northerly line of said Morey Road, at the southerly corner of land of the Chaffee Estate; thence running along the southeasterly line of land of said estate and along a stone wall ... to a point marked by a [one-half inch] iron pipe at the southerly corner of the other land of the grantor herein...." Although the parties agreed as to the location of this boundary line, a core question remained concerning the property that borders the Haynes property to the north. The deed and the map contain several statements of importance. First, W.L. Palmer distinguished his own land east of the point "marked by a [one-half inch] iron pipe" with land to the west of the marker that he described as owned by the "Chaffee Estate...." This distinction directly supports the plaintiffs' position that they own the land to the west of the marker and that the defendant owns the land to the east. Second, he stated in the deed that the marker was the southerly corner of his land. This description directly supports the position advanced by the plaintiffs. Third, the Wilford map showed a wire fence heading north from the iron pipe described as the southerly corner of Palmer's land. This evidence supports the court's conclusion that the wire fence which ran from the "southerly corner" of W.L. Palmer's land, as shown on the Wilford map, represented an approximation of the boundary line. Therefore, we do not conclude that the court's finding in this regard was clearly erroneous.
The defendant's third claim challenges the court's finding that the defendant helped his grandfather to install a barbed wire fence in the 1940s. The defendant claims that the court's finding was incorrect because he in fact helped Jackie McEnroe, a tenant farmer who worked on the land owned by his grandfather, to install the fence. We disagree.
The court stated in relevant part: "In the late 1940s, the defendant ... helped his grandfather, William Palmer, install a barbed wire fence along a line which approximates the line shown on the plaintiffs' survey as the boundary line separating the properties of the parties." Despite evidence that the defendant physically assisted McEnroe, and not his grandfather, to install the fence, the finding is not erroneous because the record supports the finding that the defendant actually helped his grandfather, the owner of the property at the time, by assisting McEnroe to put up a fence on the property. Therefore, the court's finding that the defendant helped his grandfather to install the fence was not clearly erroneous.
The defendant finally claims that the court incorrectly decided that the property line on the plaintiffs' map represented the boundary between the parties' properties. We disagree.
The court undertook a thorough analysis of the deeds and maps in determining the location of the southeast corner of the cider mill lot. The parties also presented numerous experts who provided conflicting opinions regarding the location of the boundary line. In determining credibility of the experts, the court as the trier of fact could "believe all, some or none of the testimony." (Internal quotation marks omitted.) Koennicke v. Maiorano, supra, 43 Conn.App. at 14, 682 A.2d 1046. Overall, there was ample evidence to support the court's conclusion regarding the location of the property line, including, inter alia, language in the Everitt to Skiff deed that calls for the boundary to head exclusively in a southerly direction and *672 admissions by the defendant's predecessor in title that he did not own the land west of a boundary marker. Therefore, the court's finding that the plaintiffs own the property in dispute is not clearly erroneous.
The judgment is affirmed.
In this opinion the other judges concurred.
NOTES
[1] An "acreage call" is the designated quality of land as specified in a deed. Koennicke v. Maiorano, 43 Conn.App. 1, 10-11, 682 A.2d 1046 (1996).
[2] The Everitt to Northrup deed described the land as follows: "North by the highway leading from Eben W. Chaffee's to Cornwall Bridge. East by said WH Northrup. South by said Northrup & Charles W. Munroe & Eben W. Chaffee. West by the highway leading from Garry S. Morey's to Eben W. Chaffee's by Giles Skiff & Charles W. Munroe. Said piece containing seventy five acres more or less."
[3] The description in the deed provides in relevant part: "The second piece is bounded Northerly by land of Eben W. Chaffee Westerly by land of Eben W. Chaffee and Gibbs W. Skiff Southerly by highway leading from the dwelling of Giles Skiff to Kent and Easterly by the highway leading from Garry S. Moreys to Sharon, containing in all about forty acres be the same more or less, being land conveyed to me by Joshua B. Chaffee."
[4] We recognize that the only reference to a wire fence boundary in the deed refers to a wire fence on the opposite side of the Haynes property and is not related to this dispute. The court's conclusion regarding the admission, however, is not based exclusively on the deed. It was also based on the Wilford map, which is incorporated into the deed.