******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# MYRON CAMOZZI *v.* ERIC PIERCE
## (AC 46938)

Suarez, Westbrook and Keller, Js.

*Syllabus*

The plaintiff appealed from the trial court's judgment for the defendant on the complaint and on the count of the defendant's counterclaim seeking to quiet title to a certain parcel of real property. A 1951 deed conveyed the entirety of a five acre tract of property, which included the parcel in dispute in the present action, to G. In 1975, G signed a deed as grantor that used the same boundary description as the 1951 deed but included a different acreage call. On appeal, the plaintiff claimed, inter alia, that the court improperly found that the 1975 deed conveyed the entirety of the property that had been conveyed by the 1951 deed, including the disputed parcel. *Held*:

The trial court's finding that the 1975 deed did not sever the disputed parcel from the property was not clearly erroneous, as the court, noting that an established rule of deed construction provides that boundary descriptions prevail over acreage calls and that the 1975 deed and the 1951 deed used the same adjoining owner descriptions as the boundaries of the property, properly relied on the adjoining owner descriptions instead of the acreage calls in determining that the disputed parcel was not severed from the property.

The trial court's finding that no evidence other than the acreage call in the 1975 deed indicated that the disputed parcel was severed from the property was not clearly erroneous.

Argued November 13, 2024—officially released February 11, 2025

*Procedural History*

Action, inter alia, seeking a declaratory judgment as to the title to certain real property, and for other relief, brought to the Superior Court in the judicial district of Middlesex, where the defendant filed a counterclaim; thereafter, the case was tried to the court, *Shah, J.*; subsequently, the plaintiff withdrew his claim for statutory theft, and the court, *Shah, J.*, rendered judgment for the defendant on the remaining counts of the complaint and on the counterclaim, from which the plaintiff appealed to this court. *Affirmed.*

*Robert J. Piscitelli*, for the appellant (plaintiff).

*Andrew P. Barsom*, for the appellee (defendant).

*Opinion*

WESTBROOK, J. In this action regarding title to a 1.46 acre parcel of land (disputed parcel), the plaintiff, Myron Camozzi, appeals from the judgment of the trial court rendered in favor of the defendant, Eric Pierce, on the plaintiff's complaint seeking declaratory and injunctive relief and alleging trespass and theft and on the defendant's counterclaim alleging that he is the owner of the disputed parcel. On appeal, the plaintiff claims that the court improperly found (1) that the chain of title to 105 Westbrook Road in Deep River (property) included the disputed parcel, and (2) that no evidence other than the acreage call[1] indicates that the disputed parcel was severed from the property.[2] We disagree and, accordingly, affirm the judgment of the court.

The following facts and procedural history were found by the trial court or are undisputed in the record. In 1951, Marie Cook conveyed the property subject to this appeal, a five acre parcel of land, to George J. Ressler (George I) by warranty deed.[3] In 1975, George

[1] "An 'acreage call' is the designated quantity of land as specified in a deed." *U.S. Bank National Assn.* v. *Palmer*, 88 Conn. App. 330, 331 n.1, 869 A.2d 666 (2005).

[2] In his principal appellate brief, the plaintiff asserts four separate claims of error. For ease of discussion, we address certain claims together. Specifically, the plaintiff's first claim, that the court erred in finding that the 1975 deed conveyed the entire property, his second claim, that the court erred in determining that the deeds' descriptions of which lands border the property (adjoining owner description) are more reliable than the acreage call for determining the property's boundary, and his third claim, that the court erred in affording more weight to the boundary description than the acreage call in determining whether the property includes the disputed parcel, each posit that the court improperly favored the adjoining owner description instead of the acreage call in construing the chain of title to the property. We therefore address the plaintiff's first, second, and third claims together.

[3] In 1951, Cook conveyed two parcels of land to George I. The 1951 deed applicable to both parcels specifies that the other parcel conveyed by Cook contained "about one (1) acre, more or less." Cook's conveyance of this other parcel is not relevant to this appeal.

The 1951 deed describes the parcel that is the subject of this appeal as "containing twenty-six (26) acres, more or less." Below the term "twenty-

I conveyed the property to his grandson, George M. Ressler (George II), by quitclaim deed. Although the 1975 deed purported to convey a parcel containing only four acres, more or less, it provided the same boundary description as the 1951 deed.[4]

In 1996, George II conveyed the property to himself and Anna Ressler (Resslers) using the same boundary and acreage descriptions as set forth in the 1975 deed. In 1997, the Resslers granted a mortgage on the property to Long Beach Mortgage Company, which subsequently assigned the mortgage to Norwest Bank Minnesota, N.A. Norwest Bank Minnesota, N.A., foreclosed on the property in 2000 and conveyed it to the plaintiff by limited warranty deed on October 5, 2001. The 2001 deed contained the same boundary and acreage descriptions as set forth in the 1975 deed.

---

six (26) acres" is a notation of "5 acres." During the trial in this matter, the following exchange occurred between the plaintiff's counsel and Richard Gates, the plaintiff's expert witness, regarding this discrepancy:

"Q. Now I'm going to show you . . . a deed from [Cook] back to George [I]. Do you recognize that deed?

"A. Yes, sir. I do.

"Q. And is there a difference in the description between the two prior deeds? I'm sorry, the acreage call.

"A. Yes. It's the twenty-six acres . . . . [T]his document was bracketed and underneath it, someone wrote five acres . . . . [T]his was done in 1951.

"Q. And . . . was it your opinion that the five acres was a more accurate depiction of this parcel?

"A. Yes, sir."

Because neither party disputes on appeal that the 1951 deed from Cook to George I conveyed a parcel containing five acres, more or less, all references to the 1951 deed are to Cook's conveyance of the second parcel containing five acres, more or less.

[4] The 1951 and 1975 deeds both describe the parcel being conveyed using substantially the same language. The 1975 deed describes the parcel as follows: "Bounded northerly by land now or formerly of George [I], and land now or formerly of Charles Heidtman, Sr., partly by each; easterly by land now or formerly of Natalie Isaacs; southerly by land now or formerly of said Natalie Isaacs, and land now or formerly of Charles Heidtman, Jr., partly by each; and westerly by land now or formerly of said Charles Heidtman, Jr. and by highway, partly by each . . . ."

On December 4, 2001, Russell Waldo completed a survey of the property (Waldo survey). The Waldo survey showed that the plaintiff owned a 5.12 acre parcel bound northerly by land now or formerly of George I and land now or formerly of Agnes Ressler. In 2002, in a separate lawsuit, the Resslers sought a temporary injunction against the plaintiff with respect to the property. See *Ressler* v. *Camozzi*, Superior Court, judicial district of Middlesex, Docket No. CV-02-0097742-S (February 10, 2004). In 2003, Richard Gates completed an additional survey of the property (Gates survey). The Gates survey showed that the plaintiff owned a 3.66 acre portion of the property that was bound northerly by the disputed parcel, a 1.46 acre parcel belonging to the estate of George I. The Gates survey additionally showed that the disputed parcel was bound northerly by land now or formerly of the estate of George I and land now or formerly of Agnes Ressler. On February 10, 2004, in the matter between the plaintiff and the Resslers, the court, *Hon. Daniel F. Spallone,* judge trial referee, rendered judgment by stipulation in which the Resslers forfeited any rights that they may have had to the property, including to the disputed parcel. This stipulation was not recorded in the land records.

On June 8, 2004, the administrator of the estate of Agnes Ressler conveyed the entire property, including the disputed parcel, to the plaintiff by quitclaim deed (2004 deed), describing the property as the 5.12 acre parcel depicted in the Waldo survey. The 2004 deed states: "The purpose and intent of this deed is to confirm the boundary line between the herein described property, which is currently owned by the [plaintiff], and adjoining property currently owned by the Grantor, confirming that the Grantor makes no claim of ownership in any of said herein described property, as such has never been owned by [the] Grantor."

In 2005, the plaintiff mortgaged the property to Webster Bank (bank) using the same boundary and acreage description as set forth in the 1975 deed. The bank subsequently foreclosed on the property, and, on February 25, 2019, the Superior Court rendered a judgment of foreclosure by sale. On March 28, 2019, after the judgment of foreclosure was rendered but before the foreclosure sale took place, the plaintiff conveyed the disputed parcel, "containing 1.46 acres," to Elizabeth Morgan by quitclaim deed.[5] The bank obtained title to the property on May 24, 2019, following the foreclosure sale, and subsequently sold it to the Federal National Mortgage Association (Fannie Mae) by quitclaim deed on July 12, 2019. The bank's deed to Fannie Mae used the same boundary and acreage description as set forth in the 1975 deed. On March 13, 2020, Fannie Mae conveyed the property to the defendant by special warranty deed. The defendant recorded his deed in the land records on March 26, 2020. On June 17, 2020, Morgan conveyed the disputed parcel back to the plaintiff by quitclaim deed. Despite the foreclosure and conveyances, the plaintiff has continued to occupy the disputed parcel since 2004.[6]

---

[5] We note that the plaintiff does not argue that he severed the disputed parcel from the property by way of the March 28, 2019 quitclaim deed to Morgan and that he is entitled to the disputed parcel as a result of such severance. Rather, the plaintiff's argument on appeal is that the disputed parcel has been excluded from the property's chain of title since George I severed the disputed parcel in 1975, and, therefore, the bank's 2005 mortgage on the property excluded the disputed parcel. We conclude in part II of this opinion, however, that the court properly found that George I did not sever the disputed parcel in 1975 and that the plaintiff granted the bank a mortgage on the entire property. Furthermore, Elton Harvey, the defendant's expert, testified that the plaintiff conveyed the disputed parcel to Morgan *subject to the bank's mortgage* and, when Morgan conveyed the disputed parcel back to the plaintiff on June 17, 2020, she no longer held title to convey because of the bank's foreclosure. Because the plaintiff does not raise any further claims regarding the significance of his conveyance to Morgan and her subsequent conveyance back to him, we do not discuss any additional legal implications of the plaintiff's conveyance to Morgan.

[6] There is a garage located on the disputed parcel, which the plaintiff inhabited.

On August 19, 2022, the plaintiff commenced this action against the defendant regarding the disputed parcel. In his complaint, the plaintiff sought a declaratory judgment that he holds title to the disputed parcel[7] and a permanent injunction against the defendant's use of the disputed parcel. He also stated claims against the defendant for trespass and statutory theft. On December 22, 2022, the defendant filed an amended answer, which included a statement, pursuant to General Statutes § 47-31 (d),[8] and a special defense alleging that he is the owner of the disputed parcel by virtue of the March 13, 2020 deed from Fannie Mae. The defendant also asserted a counterclaim against the plaintiff in which he sought a judgment, pursuant to § 47-31, that he is the owner of the disputed parcel free and clear of any interest of the plaintiff. The plaintiff thereafter filed a reply containing a statement, pursuant to § 47-31 (d), that he claims an interest in the disputed parcel.

---

[7] In particular, the plaintiff sought "an order pursuant to [General Statutes §] 52-29 declaring that the plaintiff is the owner of the [disputed parcel] free and clear of any claim by the defendant." Section 52-29 provides in relevant part: "The Superior Court in any action or proceeding may declare rights and other legal relations on request for such a declaration . . . ." Ordinarily, actions to determine title in real property are governed by General Statutes § 47-31; see *Koennicke* v. *Maiorano*, 43 Conn. App. 1, 9, 682 A.2d 1046 (1996); which provides in relevant part: "An action may be brought by any person claiming title to, or any interest in, real or personal property, or both, against any person who may claim to own the property, or any part of it . . . for the purpose of determining . . . interest or claim, and to clear up all doubts and disputes and to quiet and settle the title to the property. . . ." Nevertheless, "the distinction [between a declaratory judgment action and a quiet title action] is without a difference. Although actions for declaratory judgments most often involve contract disputes, declaratory judgments also involve property rights." *Gemmell* v. *Lee*, 42 Conn. App. 682, 686 n.5, 680 A.2d 346 (1996).

[8] General Statutes § 47-31 (d) provides: "Each defendant shall, in his answer, state whether or not he claims any estate or interest in, or encumbrance on, the property, or any part of it, and, if so, the nature and extent of the estate, interest or encumbrance which he claims, and he shall set out the manner in which the estate, interest or encumbrance is claimed to be derived."

The matter was tried before the court, *Shah, J.*, on June 13, 2023. Both parties presented the testimony of expert land surveyors in support of their claims. Gates, the plaintiff's expert, and Elton Harvey, the defendant's expert, both agreed that George I acquired the property in 1951 and conveyed a parcel to George II in 1975. The experts disagreed, however, as to whether the 1975 deed severed the disputed parcel from the property. Gates testified that the plaintiff holds title to the disputed parcel because the acreage calls in the chain of title indicate that the disputed parcel was severed from the property. Harvey, on the other hand, explained that "every property description in the eighty-two year chain of title to the . . . property uses the same description, which calls for [the] property to be bounded on the north by the properties that are shown on [the Gates survey] as being the adjoining properties to the north of the disputed parcel. . . . If the disputed parcel was not part of the defendant's property, then his property would be bounded on the north by the disputed parcel, which is contrary to what the land records reflect." (Citations omitted.)

On September 7, 2023, the court issued a memorandum of decision in which it made the following findings: "As [a deed's description of which lands border the property (adjoining owner description)] is the most reliable call for determining a property's boundary, that call established that the disputed parcel is part of the property that was conveyed to the plaintiff in [2001], was mortgaged by the plaintiff in [2005], was the subject of the lis pendens in [2018], was the subject of the committee deed in [2019], was the subject of the deed [to Fannie Mae] in [2019], and was conveyed to the defendant in [2020]. Additionally, there is no record of the prior lawsuit or the terms of any stipulated judgment evidencing any ownership of the plaintiff in the land records, and the plaintiff did not offer the stipulation

into evidence." The court further found the following: "[T]he defendant has shown that he has legal title to the disputed parcel through the special warranty deed he was granted on March [13], 2020. Although there is a discrepancy in the description of the total acreages between some of the deeds in the chain of title, the court is satisfied that the boundary descriptions identical in all the deeds provide for the same transfer of land, which includes the disputed parcel."

On the basis of these findings, the court rendered judgment for the defendant on the plaintiff's complaint because (1) the defendant held title to the disputed parcel by virtue of the 2020 deed from Fannie Mae and (2) the plaintiff was the record owner of the disputed parcel until 2019 and thus could not demonstrate that he acquired title to the disputed parcel by adverse possession.[9] The court additionally found that the plaintiff could not prove his trespass claim because he is not the owner of the disputed parcel, and he had abandoned his statutory theft claim in his posttrial brief. The court also rendered judgment for the defendant on his quiet title counterclaim. This appeal followed. Additional facts will be set forth as necessary.

As a preliminary matter, we set forth our standard of review. "[A] court's interpretation of the language of a deed presents a question of law. Therefore, insofar as our assessment of the judgment involves the court's interpretation of [a] deed of conveyance, our review is plenary." (Internal quotation marks omitted.) *U.S. Bank*

---

[9] "[T]he essential elements of adverse possession are that the owner shall be ousted from possession and kept out uninterruptedly for fifteen years under a claim of right by an open, visible and exclusive possession of the claimant without license or consent of the owner." (Internal quotation marks omitted.) *Roberson* v. *Aubin*, 120 Conn. App. 72, 74, 990 A.2d 1239 (2010). The court found that "the plaintiff owned the disputed parcel until 2019, so he cannot show that he held the disputed parcel by ousting another rightful owner without the consent of the owner."

*National Assn.* v. *Palmer*, 88 Conn. App. 330, 334, 869 A.2d 666 (2005). "In conducting a plenary review we must decide whether [the court's] conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *Bank of New York Mellon* v. *Mazzeo*, 195 Conn. App. 357, 369, 225 A.3d 290 (2020). "To the extent that the court has made findings of fact, our review is limited to a determination of whether the court's conclusions were clearly erroneous." (Internal quotation marks omitted.) *U.S. Bank National Assn.* v. *Palmer*, supra, 334. "A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . Under the clearly erroneous standard of review, a finding of fact must stand if, on the basis of the evidence before the court and the reasonable inferences to be drawn from that evidence, a trier of fact reasonably could have found as it did." (Internal quotation marks omitted.) *Circulent, Inc.* v. *Hatch & Bailey Co.*, 217 Conn. App. 622, 630, 289 A.3d 609 (2023). With these principles in mind, we turn to the plaintiff's claims on appeal.

I

The plaintiff first claims that the court improperly found that the 1975 deed conveyed the entire property, including the disputed parcel, to George II because (1) the 1975 deed is clear and unambiguous, (2) the language of the 1975 deed conveyed only four acres of the property, and (3) both experts agree that George I retained the disputed parcel. He further argues that the court improperly relied on the adjoining owner description instead of the acreage call in determining whether the 1975 deed conveyed the disputed parcel to George II. We are not persuaded.

"In determining the location of a boundary line expressed in a deed, if the description is clear and unambiguous, it governs and the actual intent of the parties is irrelevant. . . . When the description of a boundary line in a deed is ambiguous, however, the question of what the parties intended that line to be is one of fact for the trial court. . . . In the construction of an ambiguous instrument of conveyance, the decisive question of fact is the intent of the parties to the instrument." (Citation omitted; internal quotation marks omitted.) *Gleason* v. *Atkins*, 225 Conn. App. 745, 765, 317 A.3d 1168, cert. denied, 350 Conn. 901, 322 A.3d 1059 (2024).

We begin with the language of the 1975 deed, which describes the parcel being conveyed as follows: "Bounded northerly by land now or formerly of George [I], and land now or formerly of Charles Heidtman, Sr., partly by each; easterly by land now or formerly of Natalie Isaacs; southerly by land now or formerly of said Natalie Isaacs, and land now or formerly of Charles Heidtman, Jr., partly by each; and westerly by land now or formerly of said Charles Heidtman, Jr. and by highway, partly by each, containing four (4) acres, more or less. Being a portion of the [five acre] parcel described in a deed from Marie Cook to George [I] dated November 8, 1951 . . . ."

In the present matter, the parties disagree as to whether we should employ a plenary or a clearly errone-ous standard of review. The plaintiff argues that the 1975 deed is clear and unambiguous as to its acreage call and, therefore, plenary review applies. The defen-dant, on the other hand, argues that this appeal does not require us to construe a deed and, therefore, we review the trial court's findings of fact for clear error. Alternatively, the defendant argues that the 1975 deed is clear and unambiguous as to its boundary description and, therefore, plenary review applies. Insofar as this

appeal requires us to review the court's finding of the grantor's intent as expressed in the 1975 deed, it involves the construction of a deed. See *Gleason* v. *Atkins*, supra, 225 Conn. App. 782 (appellate court construed deed to determine boundary line of property). Therefore, we must first determine whether the 1975 deed is ambiguous.

Although both parties argue that the 1975 deed is clear and unambiguous, they assert different interpretations of the grantor's intent. We are mindful that "[t]he mere fact that the parties advance different interpretations of the language in question does not necessitate a conclusion that the language is ambiguous." (Internal quotation marks omitted.) *Freidheim* v. *McLaughlin*, 217 Conn. App. 767, 783, 290 A.3d 801 (2023). However, "[a] latent ambiguity arises from extraneous or collateral facts that make the meaning of a deed uncertain although its language is clear and unambiguous on its face. . . . Latent ambiguity exists where, although language in a deed appears to be certain on its face, it is rendered uncertain when compared to the land that it is purported to describe." (Internal quotation marks omitted.) *Williams* v. *Green Power Ventures, LLC*, 221 Conn. App. 657, 679–80 n.12, 303 A.3d 13 (2023), cert. denied, 348 Conn. 938, 307 A.3d 273 (2024). Such is the case here.

Even if the boundary description and acreage call appear clear and unambiguous on the face of the 1975 deed, the two descriptions conflict when compared with the property. Although the boundary description, in light of the 1951 deed's boundary description and the Waldo survey, reasonably implies that the parcel contains five acres, more or less, the acreage call describes a parcel containing four acres, more or less, and the parties disagree as to which description prevails. Thus, a latent ambiguity exists in the 1975 deed because the grantor's intent is unclear as to whether

he intended to convey four or 5.12 acres. We therefore review the court's finding of the grantor's intent for clear error. See *Stefanoni* v. *Duncan*, 282 Conn. 686, 704, 923 A.2d 737 (2007) ("[w]hen there is a latent ambiguity, the meaning of the ambiguous . . . deed is an issue of fact for the trial court and we cannot disturb its finding, based as it is upon evidence of the surrounding circumstances and the situation of the property, which legally supports it" (internal quotation marks omitted)).

"Our basic rule of construction is that recognition will be given to the expressed intention of the parties to a deed . . . and that it shall, if possible, be so construed as to effectuate the intent of the parties. . . . In arriving at the intent expressed . . . in the language used, however, it is always admissible to consider the situation of the parties and the circumstances connected with the transaction, and every part of the writing should be considered with the help of that evidence. . . . In the construction of a deed or grant, the language is to be construed in connection with, and in reference to, the nature and condition of the subject matter of the grant at the time the instrument is executed, and the obvious purpose the parties had in view. . . . [I]f the meaning of the language contained in a deed or conveyance is not clear, the trial court is bound to consider any relevant extrinsic evidence presented by the parties for the purpose of clarifying the ambiguity." (Internal quotation marks omitted.) *Gleason* v. *Atkins*, supra, 225 Conn. App. 765–66.

The plaintiff argues that the language of the 1975 deed shows that George I conveyed a portion of the property to George II and retained the remaining portion. In support of his argument, the plaintiff points to the provisions of the 1975 deed that describe the parcel as "containing four (4) acres, more or less," and as "[b]eing a portion of the [five acre] parcel described in [the 1951] deed from Marie Cook to George [I] . . . ."

The defendant, on the other hand, argues that the 1975 deed contained the same boundary descriptions as the 1951 deed and, therefore, the 1975 deed conveyed the entire property, including the disputed parcel, to George II. The trial court agreed with the defendant, and we conclude that its finding is not clearly erroneous.

"[W]hen a deed sets forth two different descriptions of the property to be conveyed, the one containing the less certainty must yield to that possessing the greater, if apparent conflict between the two cannot be reconciled." (Internal quotation marks omitted.) *Rocamora* v. *Heaney*, 144 Conn. App. 658, 667, 74 A.3d 457 (2013). "It is well settled as a rule of the construction of deeds that [w]here the boundaries of land are described by known and fixed monuments which are definite and certain, the monuments will prevail over courses and distances." (Internal quotation marks omitted.) *Koennicke* v. *Maiorano*, 43 Conn. App. 1, 10, 682 A.2d 1046 (1996). "Adjacent land may be a monument if the boundary of it is fixed." *Marshall* v. *Soffer*, 58 Conn. App. 737, 744, 756 A.2d 284 (2000); see also *Koennicke* v. *Maiorano*, supra, 11 ("[t]he land of an adjoining owner whose boundaries can be fixed by known monuments is also considered to be a monument to establish a boundary"). "On the other end of the spectrum, [t]he general rule is that the designated quantity of land called for, here acreage, is the least reliable aspect of the description determining the intent by the parties." (Internal quotation marks omitted.) *Thurlow* v. *Hulten*, 173 Conn. App. 694, 726, 164 A.3d 858 (2017); see also *U.S. Bank National Assn.* v. *Palmer*, supra, 88 Conn. App. 335 ("[i]t is widely recognized that acreage calls are the least reliable interpretation of a description"). Accordingly, "[t]he court attaches little weight to the call for [the number of] acres," especially when "[the] deed uses the words 'more or less,' indicating that the

parties to that deed did not intend the acreage call to be precise." *Thurlow* v. *Hulten*, supra, 714.

Here, the 1951 deed conveyed five acres, more or less, to George I, and the 1975 deed purportedly conveyed four acres, more or less, to George II. The acreage calls, therefore, could be read to suggest that George I conveyed a portion of the property that he acquired in 1951 and retained the remaining portion. Both deeds, however, describe the same adjoining owners as the boundaries of the property; see footnote 4 of this opinion; suggesting that the intent of the 1951 and 1975 deeds was to convey the same property. Harvey testified that, since 1941, the description of abutting owners in the chain of title to the property has remained the same with calls for the property to be bound northerly by the properties that are north of the disputed parcel. He further testified that, had George I retained the disputed parcel, the 1975 deed would have referred to the disputed parcel as the property's northern boundary. Moreover, although the 1975 deed states that the parcel being conveyed is a *portion* of the parcel conveyed in the 1951 deed, there is no evidence in the record to show that George I retained the disputed parcel as neither he nor his estate ever conveyed the disputed parcel separate from the property.

The plaintiff contends that both experts agreed on the basis of the 1975 deed that George I retained the disputed parcel, but his assertion is belied by the record. Although Harvey's report initially stated that the reduction in the acreage call from five acres to four acres "would lead to the logical conclusion that there was a remaining portion of the property in George [I] after this conveyance," the report ultimately concluded that the 1975 deed did not sever the disputed parcel. Harvey also testified at trial that the 1975 deed conveyed the entire property, including the disputed parcel, to George II on the basis of the bounding owner descriptions in

each deed in the chain of title. He further testified that it is not unusual for acreage calls in a deed to be different from the actual acreage of a property. Thus, the court reasonably could have found that Harvey did not agree with Gates that George I retained the disputed parcel.

Moreover, the court, as the trier of fact, was entitled to determine what portion, if any, of the expert opinions to credit or reject. "It is well settled that the credibility of an expert witness is a matter to be determined by the trier of fact. . . . The credibility of expert witnesses and the weight to be given to their testimony . . . is determined by the trier of fact. . . . [T]his court does not retry the case or evaluate the credibility of the witnesses. . . . Rather, we must defer to the [trier of fact's] assessment of the credibility of the witnesses based on its firsthand observation of their conduct, demeanor and attitude. . . . The [trial] judge, as the trier of facts, is the sole arbiter of the credibility of witnesses and the weight to be given to their testimony." (Citations omitted; internal quotation marks omitted.) *Mourning* v. *Commissioner of Correction*, 169 Conn. App. 444, 455, 150 A.3d 1166 (2016), cert. denied, 324 Conn. 908, 152 A.3d 1246 (2017); see also *Menard* v. *State*, 346 Conn. 506, 521–22, 291 A.3d 1025 (2023) ("a trier of fact may accept or reject, in whole or in part, the testimony of an expert"). Thus, the court was entitled to credit Harvey's expert opinion that George I did not retain the disputed parcel in the 1975 deed.

The adjoining owner description in the 1975 deed indicates that George I conveyed the same property to George II that Cook had conveyed to George I in 1951. Because boundary descriptions prevail over acreage calls, the trial court's finding that the 1975 deed did not sever the disputed parcel from the property is not clearly erroneous.

The plaintiff nevertheless argues that the court improperly relied on the adjoining owner description instead of the acreage call in determining whether the 1975 deed conveyed the disputed parcel to George II because (1) the court disregarded George I's clear intent as expressed in the 1975 deed, (2) the acreage call is more reliable than the boundary description, (3) George I did not need to change the adjoining owner description in the 1975 deed, and (4) there is no significance to the fact that the names of the abutters remained the same in all of the deeds in the multiple chains of title. We disagree.

Here, the plaintiff asked the court to quiet title on the basis of the acreage calls in the property's chain of title, which describe a parcel containing four acres, more or less. The defendant, on the other hand, asked the court to quiet title on the basis of the boundary descriptions in the property's chain of title, which indicate that the chain of title conveys the same property that Cook conveyed to George I in 1951. The court noted that, although the acreage call in the 1975 deed arguably would support a finding that George I retained the disputed parcel, the boundary description indicates that he conveyed the entire property. The court thereafter determined that "[the adjoining owner description] is the most reliable call for determining a property's boundary [and] that call established that the disputed parcel is part of the property . . . ." (Internal quotation marks omitted.)

The plaintiff argues that the court's reliance on the adjoining owner description in the 1975 deed disregards George I's clearly expressed intent to retain the disputed parcel and, therefore, "is contrary to the rules of construction." As we have already discussed, however, the established rules of construction provide that "[w]here the boundaries of land are described by known and fixed monuments," including adjacent land with

fixed boundaries, such descriptions prevail over acreage calls, which are the least reliable land description. (Internal quotation marks omitted.) *Thurlow* v. *Hulten*, supra, 173 Conn. App. 726. Thus, the court's finding as to George I's intent as expressed by the language of the boundary description in the 1975 deed is not clearly erroneous.

Although the plaintiff acknowledges that our case law provides that boundary descriptions are more reliable than acreage calls, he contends that the rule should not apply in this case because the acreage call in the 1975 deed is reliable. We are not persuaded.

The 1975 deed expressly describes the parcel as containing four acres, *more or less*, indicating that the acreage call is, at best, an estimate rather than a precise measurement of the parcel. See id., 714. There was also a discrepancy in the property's acreage when Cook conveyed it to George I in the 1951 deed. See footnote 3 of this opinion. Moreover, Harvey testified that acreage calls are the last factor to consider, after natural or artificial monument calls and metes and bounds descriptions, when determining a property's boundaries. This opinion is supported by our case law, which consistently states that acreage calls are an unreliable method for identifying property. See *Feuer* v. *Henderson*, 181 Conn. 454, 461, 435 A.2d 1011 (1980) ("any discrepancy between acreage designated in deeds and that determined by a surveyor, as found by the court, can be accounted for by the fact that many old deeds contain imprecise measurements"); *Steinman* v. *Maier*, 179 Conn. 574, 575, 427 A.2d 828 (1980) ("the designation of unsurveyed acreage contained in old deeds is quite unreliable"); *Thurlow* v. *Hulten*, supra, 173 Conn. App. 714 ("the words 'more or less,' indicat[e] that the parties to that deed did not intend the acreage call to be precise"). Accordingly, the court reasonably could have inferred that George I did not know the precise

acreage of the property and intended the 1975 deed's acreage call to be an estimate rather than a precise and reliable description of the property. Thus, the court's finding that the adjoining owner description is more reliable than the acreage call is not clearly erroneous.

The plaintiff additionally argues that the boundary description does not show that George I conveyed the entire property to George II because George I was the northern abutter before and after the 1975 conveyance and, therefore, the adjoining owner description did not need to be changed. Specifically, he argues that the 1951 deed referred to George I as the northern abutter because he owned the land to the north of the property, and he remained the northern abutter in the 1975 deed because he retained the disputed parcel. Again, we disagree.

The plaintiff's argument disregards the express language of the 1951 and 1975 deeds, which describe the property as "[b]ounded northerly by land [now or formerly] of George [I], *and land [now or formerly] of Charles Heidtman, Sr., partly by each* . . . ." (Emphasis added.) Although Heidtman, Sr., appears in the chain of title to land north of the disputed parcel, there is no evidence in the record that he ever held title to the property or the disputed parcel. Accordingly, if George I intended the disputed parcel to be the property's northern boundary, then the 1975 deed would describe the northern boundary as the land of George I *only*, rather than the lands of both George I *and* Heidtman, Sr. Because the 1951 and 1975 deeds refer to the lands of George I and Heidtman, Sr., as the northern boundary, the court's findings that the 1951 and 1975 deeds conveyed the same property is not clearly erroneous.

Finally, the plaintiff argues that the adjoining owner descriptions in the chain of title have no bearing on the determination of the property's boundaries because it

is not unusual for a deed to leave the names of abutters unchanged. In support of this argument, the plaintiff points to the chains of title to the property and its abutters to "demonstrate that the names of abutters were not updated each time there was a conveyance of property, even if those individuals no longer owned the abutting property." We are not persuaded.

Even if the adjoining owner descriptions in the property's chain of title reflect names of people who no longer own the adjoining lands, the parties can identify those lands by tracing the chains of title. Therefore, the adjoining owner descriptions in the chain of title to the property are reliable because they allow the parties to identify the adjoining properties. See *Marshall* v. *Soffer*, supra, 58 Conn. App. 744 (parties could identify property's boundary where deed described adjoining property as "now or formerly of Katherine Link Knapp" (internal quotation marks omitted)).

Thus, because the chain of title expressly refers to adjoining lands as the property's boundaries, the court properly relied on the adjoining owner descriptions instead of the acreage calls in determining that the disputed parcel was not severed from the property.

II

The plaintiff next claims that the court improperly found that "there is no other support that the disputed parcel was and remained a separate property, as Harvey testified to after searching title to the adjoining properties to determine if there was a remaining parcel that George [I] had not conveyed." The plaintiff argues that this finding is clearly erroneous because (1) George I retained title to the disputed parcel until the plaintiff purchased it in 2004, (2) the Gates survey identified the disputed parcel as separate from the property, (3) the plaintiff has improved, occupied, maintained, insured, and paid the taxes on the disputed parcel since 2004,

(4) the plaintiff did not mortgage the disputed parcel to the bank and, therefore, the bank could not foreclose on it, and (5) the defendant did not acquire the disputed parcel. We disagree.

The plaintiff first argues that the court's finding is clearly erroneous because George I retained the disputed parcel in the 1975 deed and held title to it until his heirs, the Resslers, filed the quiet title action against the plaintiff, which was settled when the Resslers sold the disputed parcel to the plaintiff in 2004. As previously discussed in this opinion, however, George I did not retain title to the disputed parcel when he conveyed it to George II in 1975. Furthermore, each conveyance between 1975, when George II acquired title, and 2001, when the plaintiff first acquired title, used the same boundary description and acreage call as the 1975 deed. Accordingly, the court reasonably could have inferred that each conveyance between 1975 and 2001 conveyed the entire property, including the disputed parcel.

Moreover, the plaintiff argues that he acquired the disputed parcel as a distinct parcel in 2004, but the 2004 deed expressly conveyed the 5.12 acre parcel depicted in the Waldo survey, which shows the disputed parcel as part of the property. "[A] reference to [a] map in [a] deed, [f]or a more particular description, incorporates [the map] into the deed as fully and effectually as if copied therein. . . . [T]he identifying or explanatory features contained in maps referred to in a deed become part of the deed, and so are entitled to consideration in interpreting the deed as though they were expressly recited therein." (Internal quotation marks omitted.) *Walters* v. *Servidio*, 227 Conn. App. 1, 11, 320 A.3d 1008 (2024). Because the deed specifies the Waldo survey, that depiction governs our interpretation of the description in the deed. See *Gleason* v. *Atkins*, supra, 225 Conn. App. 769 ("[b]ecause the [deed] specifies that [a] map

describes the parcel of land intended, that map is controlling as to our interpretation of the description provided in the deed"). Additionally, the 2004 deed states that the parties intended to *confirm* the property's boundary line, that the estate of Agnes Ressler never owned the property, and that the property consists of 5.12 acres. If the plaintiff had purchased the disputed parcel from the estate of Agnes Ressler, then the deed would state that it conveyed a parcel containing 1.46 acres previously owned by the estate of Agnes Ressler. Accordingly, the court reasonably could have inferred that the plaintiff did not purchase the disputed parcel in 2004.

The plaintiff nevertheless argues that the court's finding is clearly erroneous because the Gates survey, prepared by the plaintiff's expert in 2003, after the plaintiff acquired the property, shows the disputed parcel and the property as two separate parcels. The Gates survey, however, was not referenced in any deed in the chain of title to the property. The Gates survey, therefore, does not alter the boundary descriptions in the chain of title. See *Marshall* v. *Soffer*, supra, 58 Conn. App. 742 ("map was not referenced in any deed, and no deed description after that date in the chain of title of either the plaintiffs or the defendant was amended to reflect any change in the boundaries of land conveyed," so map did not "alter the plaintiffs' deeded description"). Moreover, the record reveals that the Gates survey existed at the time of the 2004 deed to the plaintiff. The court, therefore, reasonably could have inferred that if the disputed parcel was separated from the property, the deed would have specified the Gates survey instead of the Waldo survey. Thus, the Gates survey does not render the court's finding clearly erroneous.

The plaintiff next argues that the court's finding is clearly erroneous because he has improved, occupied, maintained, insured, and paid the taxes on the disputed

parcel since 2004. He specifically argues that he fixed the building located on the disputed parcel, that he cleaned up the land, that he paid taxes and insurance on the land, and that the disputed parcel has its own driveway. The defendant, on the other hand, argues that the plaintiff produced no evidence to show that he maintained the disputed parcel separately from the property. We agree with the defendant.

Although the plaintiff argues that he maintained the disputed parcel separately, he did not introduce any evidence, such as bills or checks, showing that he paid property taxes and insurance on the disputed parcel *separate* from those he paid on the property. Even if the disputed parcel has its own driveway, the plaintiff admits that it does not have its own address. Moreover, the record reveals that the plaintiff applied for a zoning permit in 2003 using the Waldo survey's depiction of the property as a 5.12 acre parcel. The only evidence that the plaintiff offered to support his argument that he maintained the disputed parcel separately was his own testimony, which the court was free to credit or reject. See *State* v. *DeMarco*, 311 Conn. 510, 519–20, 88 A.3d 491 (2014) ("[i]t is the exclusive province of the trier of fact to weigh conflicting testimony and make determinations of credibility, crediting some, all or none of any given witness' testimony" (internal quotation marks omitted)); *Rocamora* v. *Heaney*, supra, 144 Conn. App. 668 ("[an appellate] court does not try issues of fact or pass upon the credibility of witnesses" (internal quotation marks omitted)). Thus, the court reasonably could have inferred that the plaintiff had once owned and maintained the *entire* property, including the disputed parcel. The court's finding that no evidence supports the plaintiff's contrary contention, therefore, is not clearly erroneous.

Finally, the plaintiff argues that he did not mortgage the disputed parcel to the bank, that the bank did not

foreclose on the disputed parcel, and, therefore, the bank did not sell the disputed parcel to the defendant. Specifically, he argues that each conveyance of the property between 1975 and 2020 excluded the disputed parcel. As we have already discussed at length, however, each relevant conveyance of the property since 1951 conveyed the entire property, including the disputed parcel. Thus, when the plaintiff mortgaged the property in 2005, using the same boundary description as the 1975 deed, he mortgaged the entire property, including the disputed parcel. Consequently, when the bank subsequently foreclosed on the property, obtained title, and sold it to the defendant, it obtained title to and sold the disputed parcel. Although each conveyance described the parcel as four acres, more or less, the adjoining owner descriptions consistently describe the same parcel that Cook conveyed to George I in 1951. Therefore, the record supports the court's findings that the plaintiff mortgaged the disputed parcel and that the bank foreclosed on and sold the disputed parcel to the defendant. Therefore, the court's finding that "there is no . . . support that the disputed parcel was and remained a separate property" other than the acreage call is not clearly erroneous.

The judgment is affirmed.

In this opinion the other judges concurred.